Charles MILLS, Individually, Marie Mills, and Christopher Mills and Connor Mills, by Their Father and Next Best Friend Charles Mills, Plaintiffs,

v.

ALLEGIANCE HEALTHCARE CORPORATION, Ansell Incorporated, Ansell Perry, Inc., Ansell Healthcare Products, Inc., Smith & Nephew AHP, Inc. f/k/a Smith & Nephew, Inc., Smith & Nephew Perry, Baxter Healthcare Corporation, Baxter International, Inc., Owens & Minor, Inc., Owens & Minor Medical, Inc., Tillotson Healthcare Corporation, Medline Industries, Inc., ABCO Dealers, Inc., the Claflin Company and Little Rapids Corporation, Defendants.

No. 01 CV–10582 PBS.

United States District Court, D. Massachusetts.

Nov. 16, 2001.

Albert P. Zabin, Schneider, Reilly, Zabin & Costello, Boston, MA, for plaintiffs.

Barry S. Pollack, Dechert, Price & Rhoads, Boston, MA, Nancy J. Armitage, Yurko & Perry, Boston, MA, Douglas W. Salvesen, Yurko & Perry, Boston, MA, Joseph J. Leghorn, Nixon Peabody, Boston, MA, A. Damien Puller, Nixon Peabody LLPin, Boston, MA, James B. Peloquin, Conn, Kavanaugh, Rosenthal, Peisch & Ford, Boston, MA, Fred A. Kelly, Jr., Jason C. Kravitz, Alan E. McKenna, Nixon Peabody, Boston, MA, Robert A. Curley, Jr., Joni F. Katz, Joni Katz-Mackler, Curley & Curley, Boston, MA, Joel F. Pierce, Pierce, Davis, Fahey & Perritano, Boston, MA, Judith A. Perritano, Pierce, Davis, Fahey & Perritano, LLP, Boston, MA, Armando E. Batastini, Edwards & Angell, LLP, Providence, RI, for defendants.

### ORDER

SARIS, District Judge.

## I. INTRODUCTION

Plaintiff Charles Mills alleges that he contracted an allergy to latex as a result of his use of, and exposure to, latex rubber gloves manufactured and/or distributed by the fifteen defendants including The Claflin Company ("Claflin"). The complaint, which was amended prior to removal, sets forth four state law claims: negligence (Count I), breach of warranty (Count II), loss of consortium (Count III), and violation of Chapter 93A (Count IV).

After all the defendants removed the action to this Court under 28 U.S.C. §§ 1441(a), 1446, Plaintiffs filed a motion to remand the case, initially commenced in the Massachusetts Superior Court, asserting that this Court lacked diversity jurisdiction over the claims pursuant to 28 U.S.C. § 1332. As the lone non-diverse defendant, Claflin argues that Plaintiffs, all Rhode Island residents, fraudulently joined it solely to defeat diversity jurisdiction and moves for its dismissal as a misjoined party pursuant to Fed.R.Civ.P. 21. Eager to join with the multi-district latex gloves litigation,[1] Defendants assert that but for the fraudulent joinder of Claflin, complete diversity of citizenship between the plaintiffs and the other defendants exists.

Defendant's motion to dismiss it as a misjoined party is **ALLOWED** and Plaintiffs' motion to remand is **DENIED**.

## II. FACTUAL BACKGROUND

### A. The Complaint

With all reasonable inferences drawn in favor of the non-moving party, the amended complaint alleges the following facts. Plaintiffs Charles and Marie Mills and their two minor children, Christopher and Conner, reside in the state of Rhode Island. Charles Mills ("Plaintiff"), a registered nurse, worked as an anesthetist

---

1. *In Re Latex Gloves Products Liability Litigation*, MDL–1148.

nurse in the following four hospitals: Norwood Hospital in Norwood, Massachusetts; Newport Hospital in Newport, Rhode Island; St. Vincent's Hospital in Worcester, Massachusetts; and St. Margaret's Hospital in Dorchester, Massachusetts.

While practicing his profession, Plaintiff used, or was exposed to, general use and surgical examination gloves made of latex rubber manufactured and/or distributed by Defendants. In January of 1998, Charles Mills was diagnosed with an allergy to all forms of latex, which he claims Defendants' negligence and breaches of warranty caused. Plaintiff alleges that his latex allergy has rendered him chronically ill, prevented him from practicing his profession, and caused him to suffer other damages.

In their amended complaint, Plaintiffs named fifteen defendants including Claflin, who is both the only Rhode Island resident and the only distributor of latex gloves among the defendants. Plaintiffs advance three counts against all the defendants, including negligent failure to warn and instruct, breach of an implied warranty of merchantability, and breach of an express warranty of merchantability. However, Plaintiffs excluded Claflin from Count IV of the amended complaint, violation of Chapter 93A.

In their negligence claim (Count I), Plaintiffs contend that Defendants negligently and carelessly manufactured, packaged, and marketed their latex gloves in that their manufacturing techniques, their inadequate processing of finished gloves to remove pre-latex proteins, and their inadequate warnings and instructions on the safe use of said gloves caused Plaintiff's serious allergy to latex. (Pls.' Am. Compl. ¶¶ 20–21.) Plaintiffs do not specifically mention any negligence on the part of a distributor.

In the breach of warranty claim (Count II), Plaintiffs allege that in connection with the sale and distribution of these latex examination gloves, "the defendants placed into the stream of commerce latex examination gloves manufactured for them by them, and under their name and trademark, for the use of healthcare workers." (Pls.' Am. Compl. ¶ 24.) Defendants allegedly breached certain express and implied warranties including the express warranty that the exam gloves were hypoallergenic. (Pls.' Am. Compl. ¶ 25.) Specifically, Plaintiffs allege that the gloves were not hypoallergenic, that they were unreasonably hazardous to a degree "that the ordinary user" would not have anticipated, that Defendants failed to provide adequate instructions on the safe use of said gloves, and that they failed to provide adequate warnings to the "user" of said gloves. (Pls.' Am. Compl. ¶ 26.) Again, Plaintiffs allege that as a result of these breaches of warranty, Mills became ill and disabled. (Pls.' Am. Compl. ¶ 27.)

## B. The Removal Petition

The timely petition for removal alleges that Claflin was improperly and fraudulently joined for two reasons. (Defs.' Removal Pet. ¶ 17.) First, Defendants claim that the complaint focuses on manufacturing and design defects of latex gloves without asserting any specific claims against Claflin, a distributor. (Defs.' Removal Pet. ¶ 17.) Second, they allege that Plaintiffs never had any real intent to secure a judgment against Claflin, as evidenced by the statement of Plaintiffs' counsel, Alfred P. Zabin, Esq., that he only named Claflin as a defendant to facilitate discovery. (Defs.' Removal Pet. ¶ 18.) According to Defendants, Plaintiffs' counsel agreed to dismiss Claflin from the suit if Claflin agreed to provide discovery as if it were a party. (Defs.' Removal Pet. ¶ 18; see also Armando E. Batastini Aff., Docket 14, Ex. A).

## C. Affidavits

In the context of the motion to dismiss for fraudulent joinder and motion to remand, Plaintiff submitted an affidavit that after his diagnosis in January, 1998, he did not continue to wear latex gloves except when performing a spinal procedure, which he did infrequently. (Charles Mills Suppl. Aff. ¶ 1, Docket 51.) Even then, he wore vinyl gloves under the latex ones. (Id.) Mills states that it was not only the physical contact with the latex gloves that initiated a reaction on his part, "It was also the allergens released into the environment when the latex gloves were taken on and off by coworkers." (Id. at ¶ 2.) Even after his diagnosis, he continued to work in operating rooms with other employees who wore and used latex gloves during medical procedures. (Id. at ¶ 3.) He does not remember the manufacturer of the gloves they used although he expected his coworkers could. (Id. at ¶ 4.)

Plaintiffs claim they named Claflin as a defendant based on an e-mail from a Norwood Hospital employee who listed Claflin's name as a vendor of latex gloves to the hospital during Charles Mills' term of employment there (October 1, 1995 until March 15, 2000). (See Zabin Aff., Pls.' Opp. Mem., Ex. A ¶ 3; see also Pls.' Opp. Mem., Ex. B at 4.) Claflin, however, produced an affidavit that it only began to supply latex gloves distributed by ABCO Dealers, Inc. ("ABCO") to Norwood Hospital on July 15, 1998, more than five months after Mr. Mills' latex allergy diagnosis. (Johnson Aff., Def.'s Suppl. Mem. Supp., Ex. A ¶ 5.) It has never supplied latex gloves to the other three hospitals in which Mills worked. (Id. at ¶ 8.) In addition, Claflin stated that it distributes the products in the original manufacturer's packaging, not its own. (Id. at ¶ 9.)

## III. DISCUSSION

### A. Standard for Fraudulent Joinder

A civil case, at law or in equity, presenting a controversy between citizens of different states, and involving the requisite jurisdictional amount, may be removed from a state court into a United States District Court by a non-resident defendant. See 28 U.S.C. §§ 1441(b); 1446; 1332. The right to remove is "to be determined according to the plaintiff's pleading at the time of the petition for removal." Pullman Co. v. Jenkins, 305 U.S. 534, 537, 59 S.Ct. 347, 83 L.Ed. 334 (1939) (holding that the second amended complaint filed post-removal should not have been considered in determining whether removal was appropriate). This right of removal cannot be defeated by a fraudulent joinder of a non-diverse defendant "having no real connection with the controversy." Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921) (describing the joinder of a defendant as a sham or device to prevent the exercise of the right of removal where plaintiff, according to the undisputed removal petition, knew that the person was not in any degree responsible for his injuries). A joinder is a sham and fraudulent if it is "without any reasonable basis in fact and without any purpose to prosecute the cause in good faith against the [defendant]." Id. at 98, 42 S.Ct. 35 See Chesapeake & Ohio Ry. v. Cockrell, 232 U.S. 146, 153, 34 S.Ct. 278, 58 L.Ed. 544 (1914) (holding that a petition, which stated a good cause of action under state law, did not demonstrate a fraudulent device to prevent a removal unless it was "without any reasonable basis").

The linchpin of the fraudulent joinder analysis is whether the joinder of the non-diverse party has a reasonable basis in law and fact. Although the First Circuit has not articulated a standard for evaluating a claim of fraudulent joinder, it

has stated in dicta that "a finding of fraudulent joinder bears an implicit finding that the plaintiff has failed to state a cause of action against the fraudulently joined defendant." *Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d 875, 877 (1st Cir.1983) (citing 1A James Wm. Moore et al., Moore's Federal Practice ¶ 0.161[2] at 276 n. 5 (2d ed.1993)). The Second Circuit articulated the following useful disjunctive test:

> In order to show that naming a nondiverse defendant is a "fraudulent joinder" effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, *or* that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court.

*Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir.2001) (emphasis added) (holding joinder fraudulent where no claims were alleged against non-diverse parties). *See also Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992) (holding that fraudulent joinder may be found where a plaintiff has "no chance of recovering damages" against non-diverse defendant); *Insinga v. LaBella*, 845 F.2d 249, 254 (11th Cir.1998) (same); *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir.1998) (holding that fraudulent joinder may be found where "there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant"); *Coughlin v. Nationwide Mut. Ins. Co.*, 776 F.Supp. 626, 628 (D.Mass.1991) (holding that fraudulent joinder exists when the plaintiff fails to state a claim against the non-diverse defendant). A mere theoretical possibility of recovery under state law does not suffice to preclude removal. *Badon v. RJR Na-*

*bisco, Inc.*, 236 F.3d 282, 286 n. 4 (5th Cir.2000).

To meet its burden, a defendant need not prove that plaintiffs intended to mislead or deceive. *Coughlin*, 776 F.Supp. at 628 n. 3. Rather, the primary concern is whether plaintiffs' claim was brought in good faith. *Coventry Sewage Assocs. v. Dworkin Realty Co.*, 71 F.3d 1, 6 (1st Cir.1995) (involving a challenge to subject matter jurisdiction based on the alleged jurisdictional amount). Subjective good faith is not enough. *See In re Maine Asbestos Cases*, 44 F.Supp.2d 368, 371–373 (D.Maine 1999) (For fraudulent joinder, then, I conclude that a defendant must show to a legal certainty not only that the actual facts did not entitle the plaintiff to relief against the nondiverse defendant he or she has joined, but also that the plaintiff should have known those actual facts at the time of filing).

■ Even where a plaintiff is mistaken about the factual basis for his claim, a court may infer a wrongful joinder where the plaintiff failed to conduct a reasonable investigation. This is because "knowledge may be imputed where one willfully closes his eyes to information within his reach." *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 185, 27 S.Ct. 184, 51 L.Ed. 430 (1907) (upholding a ruling of fraudulent joinder based on affidavits demonstrating that there was no factual basis for the claim of negligence against the non-diverse defendant).

**B.  *The Procedure***

■ In analyzing a claim of fraudulent joinder, a court is not held captive by the allegations in the complaint. *Id.* at 181, 27 S.Ct. 184. In *Wilson*, the Supreme Court established the procedure for challenging a joinder as fraudulent:

> If in such a case a resident defendant is joined, the joinder, although fair on its

face, may be shown by a petition for removal to be only a sham or fraudulent device to prevent a removal; but the showing must consist of a statement of facts rightly leading to the conclusion apart from the pleader's deductions. The petition must be verified, and its statements must be taken by the state court as true. If removal is effected, the plaintiff may, by a motion to remand, plea or answer, take issue with the statements in the petition. If he does, the issues so arising must be heard and determined by the District Court, and at the hearing the petitioning defendant must take and carry the burden of proof, he being the actor in the removal proceeding. But if the plaintiff does not take issue with what is stated in the petition, he must be taken as assenting to its truth, and the petitioning defendant need not produce any proof to sustain it.

*Wilson*, 257 U.S. at 97–98, 42 S.Ct. 35. The Court may also examine affidavits of the parties in determining the propriety of joinder. *See Wecker*, 204 U.S. at 181, 27 S.Ct. 184 (holding that the uncontested facts in the petition itself demonstrated that, factually speaking, the defendant was joined without any purpose to prosecute the action in good faith as against him and with the purpose of fraudulently defeating the employer's right of removal); *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 285 n. 3 (5th Cir.2000) (considered "undisputed summary judgment type evidence" when determining whether any reasonable possibility of recovery under state law existed); *Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 357 (5th Cir.1999) (claim as to defendant is fraudulent, so as not to prevent removal, where court "determines, after resolving 'all disputed questions of fact and any ambiguities in the current controlling substantive law in plaintiff's favor' that there is 'no reasonable basis for predicting that

the plaintiff might establish liability'" against that defendant).

However, an examination of evidence extrinsic to the allegations of the complaint, to determine whether there is any reasonable likelihood of recovery, can be problematic in fact-laden disputes, particularly where the opportunity for discovery has been lopsided. *See Mill–Bern Assoc., Inc. v. Dallas Semiconductor Corp.*, 69 F.Supp.2d 240, 245 (D.Mass.1999) (rejecting claim by a defendant based on one deposition transcript that plaintiff cannot prove claims against non-diverse party where complaint's allegations were sufficient and discovery had just begun).

Accordingly, this Court will examine the affidavits and petition for removal in determining whether there is a possibility that plaintiff can recover based on the causes of action asserted in the amended complaint.

## C. *Legal Analysis*

■ With these principles in mind, I address the three arguments raised by Defendants to support their claim of fraudulent joinder.

First, Defendants challenge Plaintiffs' motive in adding Claflin as a non-diverse party, claiming that Plaintiffs' counsel did not truly intend to secure a judgment. This argument misses the mark. So long as the plaintiffs have an objectively valid basis for joining Claflin in the complaint, their subjective motivations are largely irrelevant. *See In re Maine Asbestos Cases*, 44 F.Supp.2d at 374 n. 2 (citing *Chicago, Rock Island & Pac. Ry. Co. v. Dowell*, 229 U.S. 102, 113–114, 33 S.Ct. 684, 57 L.Ed. 1090 (1913)). Moreover, Defendants rest on Plaintiff counsel's statement that he only joined Claflin to facilitate discovery. Plaintiffs' counsel does not recall making that precise statement and denies that he did not intend to secure judgment against

Claflin. Regardless, this off-hand comment is not tantamount to clear and convincing evidence that Plaintiffs have a bad faith motivation or fraudulent intent to defeat removal jurisdiction.

Defendants' second argument also fails to justify a finding of fraudulent joinder. Relying on *Hamson v. Standard Grocery Co.*, 328 Mass. 263, 265, 103 N.E.2d 233 (1952) (upholding directed verdict in favor of distributor when there was no evidence that it behaved negligently), Defendants argue that Claflin is just a distributor and that under Massachusetts law its liability is secondary to that of the manufacturer. However, this is an outdated misstatement of Massachusetts law governing the warranty of merchantability.

Massachusetts law imposes liability on distributors of products for breach of an implied warranty and for negligence. Mass. Gen. L. ch. 106, § 2–314, § 2–318. *See, e.g., Simmons v. Monarch Machine Tool Co.*, 413 Mass. 205, 207 n. 3, 596 N.E.2d 318 (1992); *Allen v. Chance Manufacturing Co.*, 398 Mass. 32, 494 N.E.2d 1324 (1986). Massachusetts imposes strict liability on distributors of products, even those who act merely as a conduit and neither alter the product nor contribute to its injuriousness. *See Mitchell v. Stop & Shop Cos.*, 41 Mass.App.Ct. 521, 523, 672 N.E.2d 544 (1996) (liability extends to distributors and retailers). Under Massachusetts law, a plaintiff can recover for negligence and breach of warranty, express or implied, if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume, "or be affected by the goods." Mass. Gen. L. ch. 106, § 2–318.[2] Plaintiffs allege that Claflin failed to provide adequate warnings for the safe use of latex gloves and sold an unreasonably dangerous product. As a practicing nurse, Charles Mills was not only a reasonably foreseeable user of latex gloves, but also a person whom Claflin could have reasonably expected to be affected by its product. Therefore, Plaintiffs have stated a cognizable claim under Massachusetts law against Claflin.

The third argument, however, deals a fatal blow to the complaint against Claflin. Defendants argue that since Claflin did not begin to distribute the latex gloves until after plaintiff contracted the allergy, its products could not possibly have caused the injury, thus spelling the doom of Plaintiffs' negligence and breach of warranty claims against Claflin. It is true that Plaintiffs originally named Claflin as a defendant because it "is a distributor of latex gloves which Mills used at Norwood Hospital and allege[dly] caused his injuries." (Pls.' Mem. Opp. at 4, Docket No. 18). After further discovery revealed that Plaintiff did not use Claflin-distributed gloves until after his diagnosis, Plaintiffs back-pedaled, arguing that they could still recover against Claflin because Plaintiff continued to have adverse reactions to latex gloves worn by co-workers. Defen-

---

**2.** Section 2–318 provides:

Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume or be affected by the goods. The manufacturer, seller, lessor or supplier may not exclude or limit the operation of this section. Failure to give notice shall not bar recovery under this section unless the defendant proves that he was prejudiced thereby. All actions under this section shall be commenced within three years next after the date the injury and damage occurs. Mass. Gen. L. ch. 106, § 2–318.

dants, in turn, countered that the amended complaint does not allege that exposure to latex gloves *after* Plaintiff contracted the allergy exacerbated or enhanced his allergy, or caused him additional harm.

Even when the amended complaint is read broadly to encompass exacerbation of an injury, Plaintiffs have virtually no possibility of success in this regard because they have failed to allege or provide evidence that Plaintiff was ever exposed to latex gloves distributed by Claflin. Plaintiff concedes that he does not know the manufacturers of the latex gloves worn by co-workers at Norwood Hospital. Furthermore, Claflin does not repackage or re-label gloves that it distributes, instead simply providing gloves in the original manufacturers' packaging. Given the absence of any distinguishing markings, it would be impossible for Plaintiff to identify the gloves that exacerbated his injury as the ones manufactured by Claflin.

The only theory that might conceivably save Plaintiffs' case against Claflin is that of market share liability. Under this theory, a court may tolerate "some relaxation of the traditional identification requirement in appropriate circumstances so as to allow recovery against a negligent defendant of that portion of a plaintiff's damages which is represented by that defendant's contribution of [a harmful product] to the market in the relevant time period." *Payton v. Abbott Labs.*, 386 Mass. 540, 574, 437 N.E.2d 171 (1982) (holding that market share liability theory could not be used to hold named defendants, DES manufacturers, responsible for marketing a prescription drug that injured plaintiffs *in utero* ).

Although the Supreme Judicial Court of Massachusetts has never categorically rejected the theory, neither has it clearly sanctioned its validity or used it, thus far, to uphold a remedy to injured plaintiffs.

*See id.* at 572–75, 437 N.E.2d 171. Federal case law in this circuit reveals some uncertainty as to whether the theory is truly moribund, or simply has not yet been applied to a suitable factual record. *Compare Santiago v. Sherwin Williams Co.*, 3 F.3d 546, 549 (1st Cir.1993) (holding that even if the Supreme Judicial Court did recognize market share liability in lead poisoning context, plaintiffs' failure to pinpoint the time frame of the injurious conduct made it inapplicable), *and McCormack v. Abbott Labs.*, 617 F.Supp. 1521 (D.Mass.1985) (holding that market share theory of products liability was available under Massachusetts law to plaintiff who could not meet traditional identification requirements), *with Gurski v. Wyeth–Ayerst Div. of Am. Home Prods. Corp.*, 953 F.Supp. 412, 418 (D.Mass.1997) ("[T]he SJC does not recognize market share liability . . . .").

At least two Massachusetts Superior Court judges have inspired a glimmer of hope by permitting plaintiffs' claim to survive a motion for summary judgment on the theory of market share liability. *See Mahar v. Hanover House Industries*, No. CIV.A.880156, 1995 WL 1146188, at *2 (Mass.Sup.Ct. Dec. 12, 1995) ("This is an appropriate case to allow a plaintiff to proceed with a develop a theory of liability [against defendant suppliers of exercise rowing machines] which is in the formative stages in this Commonwealth and which has a reasonably good chance for recognition by the appellate courts."); *Russo v. Material Handling Specialties Co.*, No. CIV.A. 9101209, 1995 WL 1146853, at *6 (Mass.Sup.Ct. Aug. 29, 1995) ("This court adopts the market share liability standard employed by the state of Washington because it is consistent with the concerns articulated by the Supreme Judicial Court.")

Nevertheless, this court is mindful of the First Circuit's admonition that "federal courts sitting in diversity at a plaintiff's election ought not 'steer state law into unprecedented configurations.'" *Santiago v. Sherwin Williams Co.*, 3 F.3d 546, 549 (1st Cir.1993). *See also Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975) ("A federal court in a diversity case is not free to engraft onto those state rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the State in which the federal court sits."); *Porter v. Nutter*, 913 F.2d 37, 41 (1st Cir.1990) ("Our function [in diversity jurisdiction] is not to formulate a tenet which we, as free agents, might think wise, but to ascertain, as best we can, the rule that the state's highest tribunal would likely follow.") (quoting *Kathios v. General Motors Corp.*, 862 F.2d 944, 949 (1st Cir.1988)).

Given that no appellate court in the Commonwealth of Massachusetts has yet upheld the theory of market share liability, this court cannot entertain it to salvage Plaintiffs' otherwise doomed claim against Claflin. It is worth noting, however, that even if this court took such an unusual step, Plaintiffs have failed to demonstrate how the theory might enable them to prevail in this case. Neither the Plaintiffs' amended complaint, nor their memorandum opposing the defendant's motion to dismiss it as a misjoined party, explicitly makes reference to the theory, let alone articulates how it might be applied to the facts.

## IV. ORDER

The motion to drop Claflin as a misjoined party is **ALLOWED.** Plaintiff's motion to remand is **DENIED.** Because Plaintiffs did not brief their claims of breach of an express warranty or violation of Mass. Gen. L. ch. 93A, these claims are deemed waived.