Natale A. GABRIELLE, Plaintiff,

v.

**ALLEGRO RESORTS HOTELS, d/b/a Jack Tar Village St. Kitts, TNT Vacations, and Trek Tours, Ltd., Defendants.**

**Lisa Rollins, Plaintiff,**

v.

**Allegro Resorts Hotels, d/b/a Jack Tar Village St. Kitts, TNT Vacations, and Trek Tours, Ltd., Defendants.**

**Nos. CIV.A. 02–150 ML, CIV.A.02–151 ML.**

United States District Court, D. Rhode Island.

May 30, 2002.

John P. Toscano, Jr., Westerly, RI, for Natale A. Gabrielle.

Edward H. Newman, Westerly, RI, for Lisa Rollins.

Craig S. Harwood, Brad A. Compston, Rodney E. Gould, Rubin, Hay & Gould, P.C., Framingham, MA, for TNT Vacations, Trek Tours, Ltd.

### MEMORANDUM AND ORDER DENYING PLAINTIFFS' MOTIONS TO REMAND

MARTIN, United States Magistrate Judge.

Before the court in the above consolidated cases are the motions of Plaintiffs Natale A. Gabrielle ("Gabrielle") and Lisa Rollins ("Rollins") (collectively "Plaintiffs") to remand these actions to the State of Rhode Island Superior Court for Washington County. Plaintiffs contend that in each case the amount in controversy does not exceed $75,000 and that complete diversity is not present because Defendant Trek Tours, Ltd., ("Trek"), is a Rhode Island corporation with offices located in Westerly, Rhode Island. For the reasons explained below, the court concludes that the amount in controversy exceeds $75,000.00 and that the presence of Trek as a defendant does not destroy complete diversity because Trek has been fraudulently joined. Accordingly, the motions to remand must be denied.

## Facts[1] and Travel

Plaintiffs are residents of Westerly, Rhode Island, and at the time of the incident alleged in the Complaints were boyfriend and girlfriend. Sometime prior to February 26, 2000, they booked a tour to Jack Tar Village St. Kitts, a resort hotel owned by Allegro Resorts Hotels ("Allegro"). Allegro has offices in Miami, Florida.[2] Plaintiffs used Trek, a Westerly travel agency, and TNT Vacations ("TNT"), a Boston, Massachusetts, company, to book the tour.

Plaintiffs arrived at Jack Tar Village St. Kitts on February 26, 2000, and were given a room on the second floor of the hotel. During the early morning hours of February 29th, a robber entered Plaintiffs' hotel room. Entry was gained through a balcony door which Gabrielle had left open approximately four inches because the air conditioner prevented him from sleeping. The opening was covered by a screen. Plaintiffs were awakened, and Gabrielle was assaulted by the robber. The assault was witnessed by Rollins. Gabrielle sustained personal bodily injuries and psychological injuries for which he sought medical attention and psychiatric treatment. Rollins was also injured and sought medical attention and psychiatric treatment.[3] Plaintiffs both allege that they have been disabled as a result of their injuries.

Gabrielle filed his Complaint against Allegro, TNT Vacations[4] ("TNT"), and Trek in the Washington County Superior Court on or about February 28, 2002. Rollins filed her similarly worded Complaint on or about the same date. TNT removed both actions to this court on April 1, 2002, pursuant to 28 U.S.C. §§ 1441 and 1446. In the Notice of Removal filed with each case,[5] TNT alleges that this court has original jurisdiction under 28 U.S.C. § 1332(a) (diversity jurisdiction), that the amount in controversy reasonably exceeds $75,000.00, and that diversity of citizenship exists except with respect to Trek which has been fraudulently joined. *See* Notice of Removal ¶¶ 3, 7. On May 2, 2002, Plaintiffs moved to remand the actions to the state court. TNT filed an opposition to each Motion to Remand on May 6, 2002. The court conducted a hearing on May 23, 2002, and took the matters under advisement.[6]

## Discussion

### I. Amount in Controversy

Plaintiffs challenge TNT's claim that the amount in controversy exceeds $75,000.00, the minimum jurisdictional amount established by 28 U.S.C. § 1332(a) for diversity cases. The party invoking the jurisdiction of a federal court carries the burden of proving its existence. *See Coventry Sew-*

---

1. The facts are taken from the Complaints unless otherwise stated.

2. According to TNT Vacations' Notice of Removal, "[u]pon information and belief, Allegro Resort [sic] Hotels, d/b/a Jack Tar Village Resorts, is a Spanish corporation headquartered in Spain, and the Florida office is an affiliate company that does marketing for it in the United States." Notice of Removal ¶ 6.

3. Rollins does not specify in her Complaint the manner in which she was injured other than to allege that she "suffered injuries to herself including psychological injuries." Rollins' Complaint ¶ 26. At the hearing, Rol-

lins' counsel, in response to an inquiry from the court, stated that Rollins did not suffer any physical injury.

4. TNT states that its true name is Trans National Travel, Inc., d/b/a TNT Vacations ("TNT"). *See* Notice of Removal at 1.

5. TNT has filed virtually identical Notices of Removal in each case. For convenience, the court cites to one Notice of Removal.

6. At the hearing on May 23, 2002, counsel for TNT stated that he was also representing Trek.

*age Assocs. v. Dworkin Realty Co.,* 71 F.3d 1, 4 (1st Cir.1995); *Taber Partners, I v. Merit Builders, Inc.,* 987 F.2d 57, 60 (1st Cir.1993); *Gorman v. Abbott Laboratories,* 629 F.Supp. 1196, 1203 (D.R.I.1986). Since TNT removed this case, it has the burden of proving that the amount in controversy exceeds $75,000.00.

### A. Standard of Proof

Although there is a difference of opinion among courts as to the standard of proof which a defendant must meet to defeat a plaintiff's motion to remand, *see* 16 James Wm. Moore, Moore's Federal Practice § 107.14[2][g][v] (3d ed.1997), this Magistrate Judge has previously determined that, where the complaint does not contain a specific monetary amount, the defendant must show by a preponderance of the evidence that the amount in controversy satisfies the minimum jurisdictional amount for diversity cases. *See Ondis v. Cox Communications Rhode Island,* C.A. No. 99–318 ML, Memorandum and Order at 8 (D.R.I. Mar. 30, 2000) (Martin, M.J.). This Magistrate Judge explained in *Ondis* his reasoning in adopting this standard, and it is not necessary to repeat that discussion here. Accordingly, TNT must show by a preponderance of the evidence that the amount in controversy exceeds $75,000.00.

### B. Valuation of Amount in Controversy

▮▮▮ The amount in controversy is measured "by a reasonable reading of the value of the rights being litigated." *Angus v. Shiley, Inc.,* 989 F.2d 142, 146 (3rd Cir.1993). In each Notice of Removal, TNT states that "the amount in controversy reasonably exceeds $75,000." Notice of Removal ¶ 16. While acknowledging that the Complaints do not allege a precise amount of damages (the Complaints state

only that "the amount in controversy is such to give [the Rhode Island Superior] Court jurisdiction,") *see* Complaints ¶¶ 34, 37, 41, TNT points to allegations in Gabrielle's Complaint that as a result of being robbed and assaulted in his hotel room, he "sustained personal bodily injuries and psychological injuries," *id.* ¶ 26, and "had to seek medical attention and psychiatric treatment, all of which has resulted in plaintiff being disabled, having emotional problems, and this disability presently continues and will do so indefinitely into the future," *id.* ¶ 27. As for Rollins, TNT points to almost identical allegations in Rollins' Complaint that as a result of the robbery and assault in her hotel room, she "suffered injuries to herself including psychological injuries," *id.* ¶ 26, and had "to seek medical attention and psychiatric treatment, all of which has resulted in plaintiff being disabled, having emotional problems[,] and this disability presently continues and will do so indefinitely into the future," *id.* ¶ 27.

The court notes that Plaintiffs were allegedly injured on February 29, 2000, and that their Complaints were filed on February 27, 2002. The fact that Gabrielle and Rollins each allege that they are still disabled almost two years after the incident and that their disabilities will continue indefinitely into the future weighs heavily in favor of a finding that the Complaints demonstrate that the amount in controversy reasonably exceeds $75,000.00. *Cf. Wright v. U.S. Airways, Inc.,* C.A. No. 00–565 L, Memorandum and Order at 6 (Jan. 25, 2001)(Martin, M.J.) (finding complaint insufficient to prove amount in controversy exceeded $75,000 where it did not contain any information about the nature of the plaintiff's injuries, the treatment he required, the length of treatment, and the period of any incapacity or disability).

In the instant case, Gabrielle's Complaint provides at least some detail about the nature of his injuries ("personal bodily injuries and psychological injuries," *id.* ¶ 26, "emotional problems," *id.* ¶ 27), the treatment he required ("medical attention and psychiatric treatment," *id.*), and, as previously noted, the length of his disability (i.e. that two years after the incident his disability was expected to continue "indefinitely into the future," *id.*). Rollins' Complaint contains similar allegations. She claims that as a result of the robbery and assault which took place in her room she "suffered injuries to herself including psychological injuries," *id.* ¶ 26, that she was required to "seek medical attention and psychiatric treatment," ¶ 27, that she experienced "emotional problems," *id.*, and, like Gabrielle, a continuing disability, *id.*

In support of their Motion to Remand, counsel for both Gabrielle and Rollins state that "plaintiff is of the opinion that the amount in controversy, including interest and court costs, is less than $75,000.00." Plaintiff's Memorandum in Support of Motion to Remand ("Gabrielle Mem.") at 1; Memorandum in Support of Motion to Remand ("Rollins Mem.") at 1. However, the court gives little weight to such expressions of opinion, particularly where counsel for Rollins was unwilling to stipulate or otherwise formally commit that under no circumstances would Rollins seek or accept more than $75,000.00 for her claim.[7]

In sum, the court finds that, based on the allegations contained in the Com-

plaints, TNT has proven by a preponderance of the evidence that the amount in controversy is more than $75.000.00. Therefore, the court rejects Plaintiffs' contention that the action must be remanded to the state court on that ground.

## II. Complete Diversity

Plaintiffs's second ground for remand is that complete diversity is not present by virtue of the fact that Plaintiffs are residents of Westerly, Rhode Island, and Trek is a Rhode Island corporation with an office in that same town. TNT counters that Plaintiffs have ignored the doctrine of fraudulent joinder which TNT explained and asserted in its Notice of Removal. *See* Notice of Removal ¶¶ 3–15.

### A. Fraudulent Joinder

 "Fraudulent joinder is a judicially-created doctrine which applies to two situations: (1) there has been outright fraud in the plaintiff's recitation of jurisdictional facts, or (2) there is no possibility that the plaintiff would be able to establish a cause of action against the non-diverse defendants in state court." *Tillman v. Cont'l Plaza Hotels & Resorts*, No. CIV. A. H–99–3493, 2000 WL 33250072, at *1 (S.D.Tex. Aug.10, 2000) (citations and internal quotations omitted); *accord Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir.1999); *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir.1998). The relationship between fraudulent joinder and the right of removal was explained by District Judge Patti B. Saris in *Mills v.*

---

7. Gabrielle's counsel indicated at the hearing on May 23, 2002, that he was willing to make such a commitment in writing. However, because Gabrielle's and Rollins' cases have been consolidated, a binding commitment from only one of Plaintiffs is insufficient to allow the court to find that the amount in controversy is less than the jurisdictional amount.

The court considered, as an alternative to denying the present motion to remand, recommending that the order of consolidation be vacated and that Gabrielle's case be remanded and that Rollins' case be retained. However, principles of judicial economy weigh strongly in favor of having these cases tried together, and, therefore, vacating the order of consolidation would be ill advised.

*Allegiance Healthcare Corp.*, 178 F.Supp.2d 1 (D.Mass.2001):

> This right of removal cannot be defeated by a fraudulent joinder of a non-diverse defendant "having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921) (describing the joinder of a defendant as a sham or device to prevent the exercise of the right of removal where plaintiff, according to the undisputed removal petition, knew that the person was not in any degree responsible for his injuries). A joinder is a sham and fraudulent if it is "without any reasonable basis in fact and without any purpose to prosecute the cause in good faith against the [defendant]." *Id.* at 98, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 *See Chesapeake & Ohio Ry. v. Cockrell*, 232 U.S. 146, 153, 34 S.Ct. 278, 58 L.Ed. 544 (1914) (holding that a petition, which stated a good cause of action under state law, did not demonstrate a fraudulent device to prevent a removal unless it was "without any reasonable basis").

**The linchpin of the fraudulent joinder analysis is whether the joinder of the non-diverse party has a reasonable basis in law and fact.** Although the First Circuit has not articulated a standard for evaluating a claim of fraudulent joinder, it has stated in dicta that "a finding of fraudulent joinder bears an implicit finding that the plaintiff has failed to state a cause of action against the fraudulently joined defendant." *Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d 875, 877 (1st Cir.1983) (citing 1A James Wm. Moore et al., Moore's Federal Practice ¶ 0.161[2] at 276 n. 5 (2d ed.1993)). The Second Circuit articulated the following useful disjunctive test:

> In order to show that naming a non-diverse defendant is a "fraudulent joinder" effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court.

· · · · ·

To meet its burden, a defendant need not prove that plaintiffs intended to mislead or deceive. *Coughlin [v. Nationwide Mut. Ins. Co.,]* 776 F.Supp. at 628 n. 3. Rather, the primary concern is whether plaintiffs' claim was brought in good faith. *Coventry Sewage Assocs. v. Dworkin Realty Co.*, 71 F.3d 1, 6 (1st Cir.1995) (involving a challenge to subject matter jurisdiction based on the alleged jurisdictional amount). Subjective good faith is not enough. *See In re Maine Asbestos Cases*, 44 F.Supp.2d 368, 371–373 (D.Maine 1999) (For fraudulent joinder, then, I conclude that a defendant must show to a legal certainty not only that the actual facts did not entitle the plaintiff to relief against the nondiverse defendant he or she has joined, but also that the plaintiff should have known those actual facts at the time of filing).

**Even where a plaintiff is mistaken about the factual basis for his claim, a court may infer a wrongful joinder where the plaintiff failed to conduct a reasonable investigation.** This is because "knowledge may be imputed where one willfully closes his eyes to information within his reach." *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 185, 27 S.Ct. 184, 51 L.Ed. 430 (1907) (upholding a ruling of fraudulent joinder based on affidavits demonstrating that there was no factual basis for

the claim of negligence against the non-diverse defendant).

178 F.Supp.2d 1, at 4–5 (bold added).

The Seventh Circuit has observed that "in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992). When a defendant relies upon the doctrine of fraudulent joinder to remove an action, "the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?" *Id.*

## B. The Procedure

In *Mills v. Allegiance Healthcare Corp.*, 178 F.Supp.2d 1 (D.Mass.2001), Judge Saris described the procedure that a court should follow in analyzing a claim of fraudulent joinder.

[A] court is not held captive by the allegations in the complaint. *Id.* at 181, 27 S.Ct. 184. In *Wilson*, the Supreme Court established the procedure for challenging a joinder as fraudulent:

If in such a case a resident defendant is joined, the joinder, although fair on its face, may be shown by a petition for removal to be only a sham or fraudulent device to prevent a removal; but the showing must consist of a statement of facts rightly leading to the conclusion apart from the pleader's deductions. The petition must be verified, and its statements must be taken by the state court as true. If removal is effected, the plaintiff may, by a motion to remand, plea or answer, take issue with the statements in the petition. If he does, the issues so arising must be heard and determined by the District Court, and at the hearing the petitioning defendant must take and carry the burden of proof, he being the actor in the removal proceeding. But if the plaintiff does not take issue with what is stated in the petition, he must be taken as assenting to its truth, and the petitioning defendant need not produce any proof to sustain it.

*Wilson*, 257 U.S. at 97–98, 42 S.Ct. 35. The Court may also examine affidavits of the parties in determining the propriety of joinder. *See Wecker*, 204 U.S. at 181, 27 S.Ct. 184 (holding that the uncontested facts in the petition itself demonstrated that, factually speaking, the defendant was joined without any purpose to prosecute the action in good faith as against him and with the purpose of fraudulently defeating the employer's right of removal); *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 285 n. 3 (5th Cir.2000) (considered "undisputed summary judgment type evidence" when determining whether any reasonable possibility of recovery under state law existed); *Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 357 (5th Cir.1999) (claim as to defendant is fraudulent, so as not to prevent removal, where court "determines, after resolving 'all disputed questions of fact and any ambiguities in the current controlling substantive law in plaintiff's favor' that there is 'no reasonable basis for predicting that the plaintiff might establish liability'" against that defendant).

178 F.Supp.2d at 5–6.

This court notes that in the present case Defendants' Notices of Removal are not verified. However, the court does not view this omission as fatal since the information concerning fraudulent joinder contained in the Notices of Removal consists primarily of citations to cases and legal argument. *See* Notice of Removal ¶¶ 3–15. Little factual material is asserted in the Notices which is not also contained in the

Complaints. A significant exception is the statement that Trek "did not own, operate, manage, or control" the hotel. Notice of Removal ¶ 8. However, this same information is contained in the Affidavit of Mary Deirdre F. Lonergan in Support of Defendants' Motion to Dismiss or for Summary Judgment or to Enforce Forum Selection Clause ("Lonergan Aff.") ¶ 2, and the court, therefore, considers it. *Cf. Hart v. Bayer Corp.,* 199 F.3d 239, 246–47 (5th Cir.2000)("fraudulent joinder claims can be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony")(quoting *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 100 (5th Cir. 1990)).

**C. Application**

■ TNT contends that Plaintiffs seek to hold their travel agent, Trek, which booked the trip, liable for the criminal actions of a third party occurring at a hotel which the travel agent did not own, operate, manage or control. *See* Opposition of Defendant TNT Vacations to Plaintiff's Motion to Remand ("TNT Mem.") at 5. TNT asserts that "[s]uch a claim has no possibility of success, and fraudulent joinder has been found repeatedly in similar cases." *Id.* (citing *Andrei v. DHC Hotels & Resorts, Inc.,* Docket No. 99 Civ. 2555(TPG), 2000 WL 343773, *1 (S.D.N.Y. Mar. 31, 2000)("there is no possible cause of action against Gogo Tours, Inc.[,] or Gogo Worldwide Vacations since travel agents cannot be held liable for the acts of an independent hotel"); *McLester v. Gran Columbiana Line,* 902 F.Supp. 104, 107 (E.D.La.1995)(finding defendant, who had arranged tour of ship he neither owned nor controlled, could not be held accountable for the plaintiff's fall down ship's stairway); *Pierre v. American–International Travel, Inc.,* 717 F.Supp. 435, 437 (M.D.La.1989)(finding fraudulent joinder where plaintiff sued travel agent through whom she had made airline reservation for injuries sustained in a fall in airport terminal stairway); *Arno v. Costa Line, Inc.,* 589 F.Supp. 1576, 1580–81 (E.D.N.Y.1984) (finding fraudulent joinder where plaintiff failed to set forth any authority that defendant ticket agent could be liable for injuries sustained by plaintiff aboard ship)).

The court agrees with TNT that based on the evidence before the court there is no reasonable basis in law or fact for holding Trek liable for Plaintiff's injuries. As Senior (then Chief) Judge Ronald R. Lagueux of this court noted in *McAleer v. Smith,* 860 F.Supp. 924 (D.R.I.1994), *aff'd in part* 57 F.3d 109 (1st Cir.1995):

> **Courts have generally declined to impose liability on travel agents** and tour operators **for injuries sustained by clients** aboard vessels, buses and other modes of transportation or **at hotels** or other destinations. The courts have usually found that there never existed a relationship which would have given rise to a duty on the part of the travel agent to investigate the safety of instrumentalities over which it had no control or knowledge. *See, e.g., Ross v. Trans Nat'l Travel,* 1990 WL 79229 (D.Mass. 1990); *Lavine v. General Mills, Inc.,* 519 F.Supp. 332 (N.D.Ga.1981); *Connolly v. Samuelson,* 671 F.Supp. 1312, 1317 (D.Kan.1987). *See also Wilson v. American Trans. Air, Inc.,* 874 F.2d 386, 390 (1989), *aff'd in part and remanded on other grounds,* 916 F.2d 1239 (7th Cir. 1990). This is so because the sole function of the travel agent is "to sell and arrange travel tours for those who might wish to purchase them." *Lavine,* 519 F.Supp. at 337.

860 F.Supp. at 931 (bold added).

Cases decided since *McAleer* reflect continuing adherence to the proposition that

travel agents and tour operators are not liable for the negligence of third parties.

It is a well settled principle that a travel agent cannot be liable for the negligence of a hotel which it does not own or control. This issue has been addressed by courts nationwide. *Powell v. Trans Global Tours, Inc.,* CT 98–002821, 1998 WL 777022 (D.Minn. Aug. 4, 1998), *aff'd,* 594 N.W.2d 252 (Minn.Ct.App.1999), ... is identical. There, the plaintiff sued for injuries sustained when the railing of a hotel balcony collapsed. Holding that the tour operator could not be liable for the plaintiff's injuries on any theory, the court dismissed the plaintiff's claims without allowing discovery. *Id. See also Carley v. Theater Development* Fund, 22 F.Supp.2d 224, 228 (S.D.N.Y.1998) (granting summary judgment to tour operator where plaintiff was injured by hotel window because "sponsors and operators of international tours do not have a duty to tour participants to insure the non-negligent performance of hotel services by independent contractors").

· · · · ·

Indeed, court nationwide agree with this rule and routinely hold travel agents and tour operators innocent for the negligent acts of third party providers of services such as hotels. *Tillman v. Cont'l Plaza Hotels & Resorts,* No. CIV. A. H–99–3493, 2000 WL 33250072, at *2 (S.D.Tex. Aug.10, 2000)(bold added); *see also Sachs v. TWA Getaway Vacations, Inc.,* 125 F.Supp.2d 1368, 1374–75 (S.D.Fla.2000)(granting summary judgment for tour operator where plaintiff alleged operator was liable for the negligent acts of third party suppliers of services to tour participants); *Cutchin v. Habitat Curacao–Maduro Dive Fanta–Seas, Inc.,* No. 98–1679–CIV–

GOLD, 1999 WL 33232277, at *6 (S.D.Fla. Feb.8, 1999)(citing among other cases *Viney v. Kloster Cruise, Ltd.,* 1997 AMC 544 (N.D.Cal.1996)(holding that travel agent was not responsible for conducting safety drills and therefore owed no duty to ensure that vessel conducted proper safety drills)).

While some courts have opined that travel agents and tour operators have a duty to disclose reasonably obtainable information that is relevant to the object of the agency, *see Markland v. Travel Travel Southfield, Inc.,* 810 S.W.2d 81, 84 (Mo.Ct.App.1991)(finding travel agent did not neglect its duty of ordinary care in failing to warn traveler of airline's precarious financial position about which it had no "inside information"), this duty does not extend to conditions that are obvious and readily observable by a traveler, *see id.* Here the risk in retiring for the evening in a second floor hotel room while leaving the balcony door open and protected only by a screen is obvious and should have been readily apparent to Plaintiffs.

Plaintiffs do not address TNT's fraudulent joinder argument in their memoranda. They offer no facts or law under which Trek could be held liable. The court views this omission as telling since TNT's Notice of Removal explained in detail its contention that Trek had been fraudulently joined and supported the contention by citation to considerable case law. *See* Notice of Removal ¶¶ 7–15.

Although at the hearing Counsel for Rollins stated that Trek did not tell Plaintiffs about "political problems" and "lack of proper patrols," even assuming Trek was aware of these and other conditions alleged in the Complaints, the court finds that the connection between such conditions and Plaintiffs' injuries is too attenuated and could not provide a basis for imposition of liability upon Trek. Counsel

for Rollins suggested that at this early stage in the lawsuit, prior to Plaintiffs' having the opportunity to conduct discovery, it is unfair to expect them to offer more. However, Plaintiffs must conduct a reasonable investigation prior to naming a party as a defendant. Such an investigation would presumably include researching cases which would support imposition of liability upon a travel agency like Trek. It certainly is not unfair to require Plaintiffs, who seek remand, to address legal arguments advanced by TNT in support of the application of the doctrine of fraudulent joinder, especially when Plaintiffs were fully on notice of that argument.

"Travel agents are not guarantors of the happiness or safety of the tourists [to] whom they sell tickets." *Tillman v. Cont'l Plaza Hotels & Resorts*, No. CIV. A. H–99–3493, 2000 WL 33250072, at *1 (S.D.Tex. Aug.10, 2000). In the instant case, Trek does not own, manage, operate or control the hotel at which Plaintiffs' injuries occurred. *See* Lonergan Aff. ¶ 2. Accordingly, the court finds that there is no reasonable possibility that the state court could hold Trek liable to Plaintiffs for the injuries of which they complain.

### Conclusion

For the reasons stated above, the Court DENIES Plaintiffs' Motion to Remand.

So Ordered.