In re NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY SALES PRACTICES LITIGATION.

Model No. MDL–1105(REK).
Civ. No. C.A.96–11534–REK.

United States District Court,
D. Massachusetts.

July 6, 2004.

Constantine Athanas, Palmer & Dodge, LLP, Boston, MA, Michael J. Lacek, New England Financial, Boston, MA, for Metropolitan Life Insurance Company, Defendant.

Tamara S. Wolfson, Palmer & Dodge, LLP, Boston, MA, Peter S. Terris, Palmer & Dodge, LLP, Boston, MA, for New England Mutual Life Insurance, Metropolitan Life Insurance Company, Defendants.

Alan L. Briggs, Squire, Sanders & Dempsey, Washington, DC, Stephen L. Coco, Robins, Kaplan, Miller & Ciresi L.L.P., Jonathan T. Foot, Palmer & Dodge, LLP, Boston, MA, Kenneth W. Salinger, Palmer & Dodge, LLP, Boston, MA, for New England Mutual Life Insurance, Defendant.

Earle F. Kyle, Lockridge, Grindal, Nauen & Holstein, Minneapolis, MN, Robert W. Biederman, Hubbard & Biederman, Dallas, TX, Stephen Hubbard, Hubbard & Biederman, Dallas, TX, Joseph J. DePalma, Goldstein Lite & DePalma, Newark, NJ, Aaron A. Dean, Lockridge, Grindal, Nauen & Holstein, Minneapolis, MN, Richard A. Lockridge, Lockridge, Grindal, Nauen & Holstein, Minneapolis, MN, for Clay M. King, Edwin Suib, Kenneth A. McRaney, Paul A. Wischmeyer, Sarah K. Steiner, Plaintiffs.

Maria Bobonis–Zequeira, Woods & Woods, Hato Rey, PR, Antonio Borres, Woods & Woods, Hato Rey, PR, for Betty Faigenblat, Consolidated Plaintiff.

William Bogot, Krislov & Associates, Ltd., Chicago, IL, for Edmund S. Goulder, Harold Siagel, Plaintiffs.

John L. Davidson, Frazer Davidson, Jackson, MS, for Albert J. Singletary, Betty Allen, Betty Iles, Edmund P. Miller, Jr., James R. Allen, Jill Marie Koening, Patricia Ann Lee, Roberta Raworth Scarbrough, Consolidated Plaintiffs.

Thomas R. Frazer, II, Frazer Davidson, PA, Jackson, MS, for Betty Iles, Edmund P. Miller, Jr., James R. Allen, Jill Marie Koening, Patricia Ann Lee, Roberta Raworth Scarbrough, Consolidated Plaintiffs.

Nancy F. Gans, Moulton & Gans, PC, Boston, MA, for Clay M. King, Plaintiff.

Kenneth G. Gilman, Gilman and Pastor, LLP, David Pastor, Gilman and Pastor, LLP, Saugus, MA, for Edwin Suib, Plaintiff.

Brian M. Hurley, Rackemann, Sawyer & Brewster, Boston, MA, for Kemper Galleries, Inc., George Edward Kemper, George Emil Kemper, John M. Kemper, Ruby A. Kemper, Plaintiffs.

Warren D. Hutchison, Donovan & Hatem, LLP, Boston, MA, for John Terrill, Movant.

Fred Taylor Isquith, Wolf, Haldenstein, Adler, Freeman & Herz, New York, NY, for Sarah K. Steiner, Plaintiff.

Clinton A. Krislov, Krislov & Associates, Ltd., Chicago, IL, for Edmund S. Goulder, Harold Siagel, Plaintiffs.

James P. Langendorf, Froelich & Weprin Co., L.P.A., Dayton, OH, for Magdy Migally, Plaintiff.

Stephen Moulton, Moulton & Gans, PC, Boston, MA, for Clay M. King, Jean C. King, Plaintiffs.

Robert T. Naumes, Thornton & Naumes, LLP, Boston, MA, for Benita Battles, James E. Nabors, Plaintiffs.

Diane A. Nygaard, Nygaard Law Firm, Leawood, KS, for Robert Simpson, Plaintiff.

Richard T. Phillips, Smith, Phillips, Mitchell, Scott & Rutherford, Batesville, MS, for Kenneth A. McRaney, Plaintiff.

Joel P. Suttenberg, Law Office of Joel P. Suttenberg, Boston, MA, for Paul A. Wischmeyer, Plaintiff.

James I. Weprin, Froelich & Weprin Co., L.P.A., Dayton, OH, for Magdy Migally, Plaintiff.

Ronald N. Whitney, Ronald N. Whitney, Whitman, MA, for Kemper Galleries, Inc., George Edward Kemper, George Emil Kemper, John M. Kemper, Ruby A. Kemper, Plaintiffs.

John P. Zavez, Berman DeValerio Pease Tabacco Burt & Pucillo, Boston, MA, for Michelle J. Muszynski, Paul J. Muszynski, Consolidated Plaintiffs.

## MEMORANDUM IN EXPLANATION and PRACTICE AND PROCEDURE ORDER NO. 19

KEETON, Senior District Judge.

Practice and Procedure Order No. 19 supplements earlier Practice and Procedure Orders and does not modify any of them.

### Memorandum in Explanation

### I. Introduction

In Practice and Procedure Order Number 18 (September 24, 2003), this court concluded that the only tag-along civil actions remaining in this MDL proceeding, MDL–1105 (REK), were:

*Kendall et al. v. Metropolitan Life Insurance Co. et al.*, N.D. Mississippi, C.A. No. 2:02–287, Civil Action No. 03–11040–REK;

*Henderson et al. v. Metropolitan Life Insurance Co. et al.*, S.D. Mississippi,

C.A. No. 3:03–9, Civil Action No. 03–11041–REK;

*Caston et al. v. Metropolitan Life Ins. Co. et al.,* N.D. Mississippi, C.A. No. 4:02–275, Civil Action No. 03–11547–REK; and

*Pike County National Bank v. Metropolitan Life Insurance Co. et al.,* S.D. Mississippi, C.A. No. 3:03–51, Civil Action No. 03–11548–REK.

This court also noted a schedule for further filings in *Kendall* and *Henderson.*

On October 6, 2003, a panel of the United States Court of Appeals for the First Circuit decided *In re New England Life Insurance Co. Sales Practices Litigation,* 346 F.3d 218 (1st Cir.2003), affirming my decision in *In re New England Life Insurance Co. Sales Practices Litigation,* 236 F.Supp.2d 69 (D.Mass.2002) (*SG Metals Indus., Inc. v. New England Life Ins. Co.,* No. 02–11626–REK).

On November 24, 2003, this court issued a Memorandum and Order in *Kendall* (Docket No. 36 in Civil Action No. 03–11040), allowing plaintiffs' motion for enlargement of time to serve defendant Rose Dyson.

On December 12, 2003, this court heard oral argument on all motions pending in *Caston* and *Pike County.* Before the hearing on December 12, 2003, this court allowed the requests for leave presented in the following motions:

(1) New England's Motion for Leave To Exceed Page Limit (Docket No. 39, filed December 2, 2003);

(2) Plaintiffs' Motion To File Their Rebuttal Memorandum in Support of Motion To Remand Out of Time (Docket No. 39, filed December 8, 2003);

(3) Plaintiffs' Motion for Leave To Exceed Page Limit (Docket No. 40, filed December 8, 2003).

On January 20, 2004, this court issued an Order in *Kendall* (Docket No. 39 in Civil Action No. 03–11040), allowing plaintiffs' second motion for enlargement of time to serve defendant Rose Dyson.

On February 6, 2004, a panel of the First Circuit decided *Grispino v. New England Mutual Life Ins. Co.,* 358 F.3d 16 (1st Cir.2004), affirming my decision in *Grispino v. New England Mutual Life Ins. Co.,* No. 02–12083–REK (D.Mass. May 20, 2003).

This Memorandum considers and disposes of all pending motions in the four remaining tag-along cases (*Kendall, Henderson, Caston,* and *Pike County*). I turn first to a generally applicable issue: the authority of this court to remand MDL-transferred cases directly to state court.

## II. Authority of This Court To Remand to State Court

Plaintiffs in all four remaining tag-along cases have moved to remand their respective cases to state court. In three of the four cases, defendants contend that this court, sitting as an MDL transferee court, lacks authority as a matter of law to remand tag-along cases directly to state courts.

It is clear and unambiguous under federal case law, however, that an MDL transferee court may remand a tag-along case to state court. The Judicial Panel on Multidistrict Litigation ("MDL Panel") has concluded repeatedly that "pending motions to remand [MDL-transferred actions] to their respective state courts can be presented to and decided by the transferee judge." *In re Ford Motor Co. Crown Victoria Police Interceptor Prods. Liab. Litig.,* 229 F.Supp.2d 1377, 1378 (J.P.M.L. 2002); *see also In re Western States Wholesale Natural Gas Antitrust Litig.,* 290 F.Supp.2d 1376, 1378 (J.P.M.L.2003);

*In re Farmers Ins. Exchange Claims Representatives' Overtime Pay Litig.,* 196 F.Supp.2d 1373, 1375 (J.P.M.L.2002); *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 170 F.Supp.2d 1346, 1347 (J.P.M.L.2001); *In re Air Crash Disaster at Florida Everglades on December 29, 1972,* 368 F.Supp. 812, 813 (J.P.M.L.1973).

Furthermore, the arguments that defendants offer in support of their assertion of law are erroneous or irrelevant. For example, defendants contend that, by virtue of having transferred an action to this court, the MDL Panel concluded that this court has subject matter jurisdiction over the action. (*See, e.g.,* Def. New England's Memo. Supporting Resp. to Pl.'s Second Supp., Docket No. 31 in Civil Action No. 03–11041, at 3.) This contention, however, is inconsistent with federal law. The statutory provision that governs multidistrict litigation (28 U.S.C. § 1407) "does not empower the MDL Panel to decide questions going to the *jurisdiction* or the merits of a case." *In re Ivy,* 901 F.2d 7, 9 (2d Cir. 1990) (emphasis added).

Defendants, citing to 28 U.S.C. § 1407 and Rule 7.6(b) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, also contend that the MDL Panel, not this court, is empowered to remand cases to transferor courts. (*See, e.g.,* Def. New England's Memo. Supporting Resp. to Pl.'s Second Supp., Docket No. 31 in Civil Action No. 03–11041, at 3.) This contention is correct as far as it goes. But this contention by defendants is irrelevant because the issue here is not remand to the federal transferor court, but rather remand to the original state court.

For the foregoing reasons, I conclude that this court has authority to remand tag-along cases directly to state courts. Accordingly, in the remainder of this Memorandum, I do consider and decide the pending motions to remand in the four remaining tag-along cases.

I turn first to *Kendall, Henderson,* and *Caston,* the three of which I consider together because the motions to remand in the three cases present nearly identical issues of diversity jurisdiction and fraudulent joinder. I then address *Pike County,* which presents issues unique to itself.

## III. *Kendall* (Civil Action No. 03–11040–REK), *Henderson* (Civil Action No. 03–11041–REK), and *Caston* (Civil Action No. 04–11547–REK)

### A. Pending Matters

#### 1. *Kendall*

Pending for decision in *Kendall* (03–11040–REK) are matters related to the following filings:

(1) Plaintiffs' Motion To Remand (Docket No. 5, filed July 22, 2003), with Memorandum of Authorities in Support of Plaintiffs' Motion To Remand (Docket No. 8, filed August 7, 2003);

(2) New England's Opposition to Plaintiffs' Motion To Remand (Docket No. 9, filed August 8, 2003);

(3) Defendant Fulton A. Jordan, Jr., d/b/a/ Jordan & Associates' Joinder in Opposition to Plaintiffs' Motion To Remand (Docket No. 10, filed August 11, 2003);

(4) Defendants William Ratcliffe and William McNamara's Joinder in Opposition to Plaintiffs' Motion To Remand (Docket No. 11, filed August 18, 2003);

(5) Plaintiffs' Supplemental Authority in Support of Motion To Remand (Docket No. 41, filed August 26, 2003);

(6) New England's Supplemental and Amended Opposition to Plaintiffs' Motion To Remand (Docket No. 18, filed September 18, 2003);

(7) Plaintiffs' Second Supplement of Authorities in Support of Plaintiffs' Motion

To Remand (Docket No. 19, filed September 19, 2003);

(8) Plaintiffs' Motion To Substitute the Affidavit of Allen K. Hess (Docket No. 24, filed September 29, 2003);

(9) Defendant Fulton A. Jordan's Response to the Plaintiff's [sic] Second Supplement of Authorities in Support of Plaintiff's [sic] Motion To Remand (Docket No. 34, filed October 16, 2003);

(10) Plaintiffs' Response to Fulton A. Jordan's Response to Plaintiffs' Second Supplement of Authorities in Support of Plaintiffs' Motion To Remand (Docket No. 30, filed October 16, 2003);

(11) New England's Response to the Plaintiffs' Second Supplement of Authorities in Support of Plaintiffs' Motion To Remand (Docket No. 27, filed October 2, 2003);

(12) Plaintiffs' Response to New England's Response to Plaintiffs' Second Supplement of Authorities in Support of Plaintiffs' Motion To Remand (Docket No. 31, filed October 16, 2003);

(13) Letter from Matt Stephens [Regarding Plaintiffs' Motion To Remand] (Docket No. 42, filed June 7, 2004);

(14) Defendants William Ratcliffe and William McNamara's Motion To Dismiss, or, in the Alternative, for Summary Judgment (Docket No. 12, filed August 21, 2003), with Defendants' Memorandum in Support of Motion To Dismiss or, in the Alternative, Motion for Summary Judgment (Docket No. 13, filed August 21, 2003);

(15) Plaintiffs' Response to Defendants Ratcliffe's and McNamara's Motion To Dismiss or, in the Alternative, Motion for Summary Judgment (Docket No. 15, filed September 2, 2003);

(16) Defendants Ratcliffe and McNamara's Supplement to Motion To Dismiss, or, in the Alternative, for Summary Judgment (Docket No. 23, filed September 22, 2003);

(17) Plaintiffs' Response to Defendants Ratcliffe's and McNamara's Supplement to Motion To Dismiss or, in the Alternative, Motion for Summary Judgment (Docket No. 25, filed October 1, 2003);

(18) Defendant Agents' [Ratcliffe and McNamara's] Rebuttal Brief in Support of Their Motion To Dismiss (Docket No. 32, filed October 20, 2003);

(19) Defendant Fulton A. Jordan's Motion for Summary Judgment (Docket No. 17, filed September 18, 2003), with Memorandum in Support of Fulton A. Jordan's Motion for Summary Judgment (Docket No. 21, filed September 18, 2003);

(20) Plaintiffs' Response to Defendant Fulton A. Jordan's Motion for Summary Judgment (Docket No. 26, filed October 1, 2003).

### 2. *Henderson*

Pending for decision in *Henderson* (03–11041–REK) are matters related to the following filings:

(1) Plaintiffs' Motion To Remand (Docket No. 4, filed July 22, 2003), with Memorandum of Authorities in Support of Plaintiffs' Motion To Remand (Docket No. 7, filed August 7, 2003);

(2) New England's Opposition to Plaintiffs' Motion To Remand (Docket No. 8, filed August 8, 2003), with Memorandum of Authorities Supporting New England's Opposition to Plaintiffs' Motion To Remand (Docket No. 9, filed August 8, 2003);

(3) Defendant Fulton A. Jordan, Jr., d/b/a/ Jordan & Associates' Joinder in Opposition to Plaintiffs' Motion To Remand (Docket No. 10, filed August 11, 2003);

(4) Defendants Kyle Spring and Cooper DeLoach's Joinder in Opposition to Plain-

tiffs' Motion To Remand (Docket No. 11, filed August 18, 2003);

(5) Plaintiffs' Supplemental Authority in Support of Motion To Remand (Docket No. 34, filed August 26, 2003);

(6) New England's Supplemental Opposition to Plaintiffs' Motion To Remand (Docket No. 18, filed September 18, 2003);

(7) Plaintiffs' Second Supplement of Authorities in Support of Plaintiffs' Motion To Remand (Docket No. 19, filed September 19, 2003);

(8) Plaintiffs' Motion To Substitute the Affidavit of Allen K. Hess (Docket No. 22, filed September 29, 2003);

(9) Defendant Fulton A. Jordan's Response to the Plaintiff's [sic] Second Supplement of Authorities in Support of Plaintiff's [sic] Motion To Remand (Docket No. 26, filed October 2, 2003);

(10) Plaintiffs' Response to Fulton A. Jordan's Response to Plaintiffs' Second Supplement of Authorities in Support of Plaintiffs' Motion To Remand (Docket No. 29, filed October 16, 2003);

(11) New England's Response to Plaintiffs' Second Supplement of Authorities in Support of Plaintiffs' Motion To Remand (Docket No. 27, filed October 6, 2003), with New England's Memorandum of Authorities Supporting Its Response to Plaintiffs' Second Supplement of Authorities in Support of Plaintiffs' Motion To Remand (Docket No. 31, filed October 21, 2003);

(12) Plaintiffs' Response to New England's Response to Plaintiffs' Second Supplement of Authorities in Support of Plaintiffs' Motion To Remand (Docket No. 28, filed October 16, 2003);

(13) Letter from Matt Stephens [Regarding Plaintiffs' Motion To Remand] (Docket No. 35, filed June 7, 2004);

(14) Defendants Cooper DeLoach and Kyle Spring's Motion To Dismiss, or, in the Alternative, for Summary Judgment (Docket No. 12, filed August 21, 2003), with Defendants' Memorandum in Support of Motion To Dismiss or, in the Alternative, Motion for Summary Judgment (Docket No. 13, filed August 21, 2003);

(15) Plaintiffs' Response to Defendants DeLoach's and Spring's Motion To Dismiss or, in the Alternative, Motion for Summary Judgment (Docket No. 15, filed September 2, 2003);

(16) Defendants Deloach and Spring's Supplement to Motion To Dismiss, or, in the Alternative, for Summary Judgment (Docket No. 21, filed September 22, 2003);

(17) Plaintiffs' Response to Defendants DeLoach's and Spring's Supplement to Motion To Dismiss; [sic] or, in the Alternative, Motion for Summary Judgment (Docket No. 23, filed October 1, 2003);

(18) Defendant Agents' [DeLoach and Spring's] Rebuttal Brief in Support of Their Motion To Dismiss (Docket No. 30, filed October 21, 2003);

(19) Defendant Fulton A. Jordan's Motion for Summary Judgment (Docket No. 16, filed September 18, 2003), with Memorandum in Support of Fulton A. Jordan's Motion for Summary Judgment (Docket No. 17, filed September 18, 2003);

(20) Plaintiffs' Response to Defendant Fulton A. Jordan's Motion for Summary Judgment (Docket No. 24, filed October 1, 2003).

### 3. *Caston*

Pending for decision in *Caston* (03–11547–REK) are matters related to the following filings:

(1) Plaintiffs' Motion To Remand (Docket No. 35, filed November 21, 2003), with Plaintiffs' Memorandum in Support of Motion To Remand (Docket No. 36, filed November 21, 2003), with Plaintiffs' Notice of

Filing of Evidentiary Material in Support of Motion To Remand (Docket No. 41, filed December 8, 2003);

(2) Defendant New England's Opposition to Motion To Remand (Docket No. 38, filed December 2, 2003);

(3) Plaintiffs' Rebuttal Memorandum in Support of Motion To Remand (Docket No. 42, filed December 8, 2003);  ·

(4) Defendant New England's Brief on the Applicability of the *Younger* Doctrine (Docket No. 43, filed January 15, 2004);

(5) Plaintiffs' Brief on the Applicability of the *Younger* Doctrine (Docket No. 44, filed January 16, 2004);

(6) Defendant Agents' Brief in Opposition to Abstention (Docket No. 45, filed January 20, 2004).

## B.  Relevant Procedural Background

### 1.  *Kendall*

On October 30, 2002, the *Kendall* plaintiffs filed their civil action in the Circuit Court of Tallahatchie County, Mississippi.

On December 4, 2002, defendant Metropolitan Life Insurance Company (successor in interest of New England Mutual Life Insurance company, hereinafter referred to as "New England") filed a notice of removal with the United Stated District Court for the Northern District of Mississippi.

In the Northern District of Mississippi, the *Kendall* plaintiffs filed a motion to remand.  The parties conducted discovery related to the issue of remand.

In April 2003, the Judicial Panel on Multidistrict Litigation made a conditional transfer order, transferring this case to this court.  On June 4, 2003, the record in this case was received in this court from the Northern District of Mississippi.

At a hearing on July 8, 2003, this court directed counsel to re-file in this court the motion to remand and response that were pending in the Northern District of Mississippi.

On July 22, 2003, the *Kendall* plaintiffs filed in this court a motion to remand (Docket No. 5).  Defendant New England filed an opposition (Docket No. 9), which was later joined by all the other *Kendall* defendants (Docket Nos. 10 and 11).  On August 26, 2003, the *Kendall* plaintiffs filed supplemental authority (Docket No. 41).

On August 21, 2003, defendants William Ratcliffe and William McNamara filed a motion to dismiss (Docket No. 12).  The *Kendall* plaintiffs have opposed the motion (Docket No. 15).

At a hearing on September 2, 2003, this court heard oral argument on all motions pending at the time.  This court then set a schedule for further filings.

In accordance with the schedule, the parties made numerous supplemental filings and responses with regard to the *Kendall* plaintiffs' motion to remand (Docket Nos. 18, 19, 24, 27, 30, 31, and 34).  The parties also supplemented defendants Ratcliffe and McNamara's motion to dismiss (Docket Nos. 23, 25, 32).

On September 18, 2003, defendant Fulton A. Jordan filed a motion for summary judgment (Docket No. 17).  The *Kendall* plaintiffs opposed this motion (Docket No. 26).

### 2.  *Henderson*

On December 2, 2002, the *Henderson* plaintiffs filed their civil action in the Circuit Court of Hinds County, Mississippi.

On January 3, 2003, defendant New England filed a notice of removal with the United States District Court for the Southern District of Mississippi.

In the Southern District of Mississippi, the *Henderson* plaintiffs filed a motion to remand. United States District Judge Barbour allowed limited discovery related to the issue of remand.

In late April 2003, the Judicial Panel on Multidistrict Litigation made a conditional transfer order, transferring this case to this court. On June 16, 2003, the record in this case was received in this court from the Southern District of Mississippi.

At a hearing held July 8, 2003, this court directed counsel to re-file in this court the motion to remand and response that were pending in the Southern District of Mississippi. This court also allowed depositions of defendants DeLoach and Spring, although with limitations in light of the fact that the time for remand-related discovery had expired.

On July 22, 2003, the *Henderson* plaintiffs filed in this court a motion to remand (Docket No. 4). Defendant New England filed an opposition (Docket No. 8), which was later joined by all the other *Henderson* defendants (Docket Nos. 10 and 11). On August 26, 2003, the *Henderson* plaintiffs filed supplemental authority (Docket No. 34).

On August 21, 2003, defendants De-Loach and Spring filed a motion to dismiss (Docket No. 12). The *Henderson* plaintiffs have opposed the motion (Docket No. 15).

At a hearing held on September 2, 2003, this court heard oral argument on all motions pending at the time. This court then set a schedule for further filings.

In accordance with the schedule, the parties made numerous supplemental filings and responses with regard to the *Henderson* plaintiffs' motion to remand (Docket Nos. 18, 19, 22, 26–29, and 31). The parties also supplemented defendants DeLoach and Spring's motion to dismiss (Docket Nos. 21, 23, and 30).

On September 18, 2003, defendant Fulton A. Jordan filed a motion for summary judgment (Docket No. 16). The *Henderson* plaintiffs opposed this motion (Docket No. 24).

### 3. *Caston*

On October 17, 2002, the *Caston* plaintiffs filed their civil action in the Circuit Court of LeFlore County, Mississippi.

On November 18, 2002, defendant New England filed a notice of removal with the United States District Court for the Northern District of Mississippi.

In the Northern District of Mississippi, the *Caston* plaintiffs filed a motion to remand. United States District Judge W. Allen Pepper, Jr. allowed limited discovery related to the issue of remand.

In August 2003, the Judicial Panel on Multidistrict Litigation made a conditional transfer order, transferring this case to this court. On September 3, 2003, the record in this case was received in this court from the Northern District of Mississippi.

On November 21, 2003, the *Caston* plaintiffs filed with this court a motion to remand this civil action to the Circuit Court of LeFlore County, Mississippi (Docket No. 35). Defendant New England has filed an opposition (Docket No. 38). The *Caston* plaintiffs filed a rebuttal memorandum (Docket No. 42).

At a hearing on December 12, 2003, this court heard oral argument on all motions pending at the time. This court invited the parties to submit briefs on the appropriateness of abstention in this case.

In January 2004, all parties filed briefs regarding the issue of abstention (Docket Nos. 43–45).

## C. Plaintiffs' Motions To Remand

### 1. Preliminary Matters

#### a. Motions To Substitute in *Kendall* and *Henderson*

Plaintiffs in *Kendall* and *Henderson* have filed motions to substitute the affidavit of Allen K. Hess. Facsimiles of the affidavit had been included with the documents marked in both cases as Docket Number 19, which in both cases is one of the many supplements to the plaintiffs' motion to remand. Plaintiffs in *Kendall* and *Henderson* now move to substitute originals for the facsimiles. Both motions to substitute are unopposed. The Practice and Procedure Order below accordingly allows the *Kendall* plaintiffs' motion to substitute (Docket No. 24 in Civil Action No. 03–11040) and the *Henderson* plaintiffs' motion to substitute (Docket No. 22 in Civil Action No. 03–11041).

#### b. Appropriateness of Abstention in *Caston*

At the hearing on December 12, 2003, this court invited the *Caston* parties to submit briefs regarding the appropriateness of *Younger* abstention in the case at bar. The *Caston* parties have done so (Docket Nos. 43–45) and appear to agree that abstention is inappropriate in the circumstances of *Caston*. After due consideration, I concur and conclude that abstention is inappropriate in *Caston*.

### 2. Introduction

In all three cases, defendant New England removed the original state action to federal court under 28 U.S.C. § 1441, alleging federal diversity jurisdiction.

On the faces of the three complaints, complete diversity does not exist. *See American Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP*, 362 F.3d 136, 139 (1st Cir.2004) ("[T]here must be complete diversity among the parties to sustain diversity jurisdiction." (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267, 2 L.Ed. 435 (1806))). Plaintiffs are all residents of the state of Mississippi, and all the defendants other than New England are also residents of Mississippi.

New England contends, however, that plaintiffs in all three cases fraudulently joined their respective non-diverse defendants. *See Mills v. Allegiance Healthcare Corp.*, 178 F.Supp.2d 1, 4 (D.Mass.2001) (Saris, J.) ("Th[e] right of removal on the basis of diversity jurisdiction cannot be defeated by a fraudulent joinder of a non-diverse defendant . . . ."); *see also Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir.1998) ("Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity.").

Plaintiffs in all three cases have moved under 28 U.S.C. § 1447 to remand their respective civil action to the state court from which it was removed. The *Kendall, Henderson,* and *Caston* plaintiffs assert that defendant New England has failed to demonstrate that their respective non-diverse defendants are fraudulently joined and that, accordingly, this court lacks federal subject matter jurisdiction to hear their respective case.

### 3. Legal Standard for Fraudulent Joinder

#### a. Choice of Law

■ In the ordinary course, questions of federal law in MDL-transferred cases are governed by the law of the transferee circuit. *See Montana v. Abbot Labs.*, 266 F.Supp.2d 250, 259–60 (D.Mass.2003); *see also, e.g., In re Temporomandibular Joint Implants Prods. Liability Litig.*, 97 F.3d 1050, 1055 (8th Cir.1996) ("When analyzing questions of federal law, the transferee

court should apply the law of the circuit in which it is located."); *In re Korean Air Lines Disaster of September 1, 1983*, 829 F.2d 1171, 1174 (D.C.Cir.1987) ("[W]e are persuaded by thoughtful commentary that 'the transferee court [should] be free to decide a federal claim in the manner it views as correct without deferring to the interpretation of the transferor circuit.'" (quoting Richard L. Marcus, *Conflict Among Circuits and Transfers Within the Federal Judicial System*, 93 Yale L.J. 677, 721 (1984))). The law of the transferor circuit—here, the Fifth Circuit—"merits close consideration, but [it] does not have stare decisis effect in a transferee forum situated in another circuit." *Korean Air Lines Disaster*, 829 F.2d at 1176.

With respect to certain unique questions of federal law, some debate does exist regarding the application of transferor/transferee circuit law. *See, e.g., In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F.Supp. 914 (D.D.C.1994). Such questions are not at issue here, however.

Accordingly, I look to the case law of this circuit for the legal standard for fraudulent joinder.

### b. Law of the First Circuit

The doctrine of fraudulent joinder has not oft been examined in the case law of this circuit. Indeed, the Court of Appeals for the First Circuit has not articulated a standard for evaluating a claim of fraudulent joinder. I look, therefore, to the decisions of my able colleagues on this court. *See Mills*, 178 F.Supp.2d at 4–6 (Saris, J.); *Fabiano Shoe Co., Inc. v. Black Diamond Equipment, Ltd.*, 41 F.Supp.2d 70, 71–72 (D.Mass.1999) (Harrington, J.).

Judge Saris has described "[t]he linchpin of the fraudulent joinder analysis [as] whether the joinder of the non-diverse party has a reasonable basis in law and fact." *Mills*, 178 F.Supp.2d at 4, She cited with some approval the following disjunctive test from the Second Circuit:

"In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, *or* that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court."

*Id.* at 5 (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir.2001)). To the latter portion of the test, Judge Saris added that a "mere theoretical possibility of recovery" is not sufficient. *Id.* (citing *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286 n. 4 (5th Cir.2000)).

Judge Harrington similarly states:

Joinder is considered fraudulent when there is no possibility that the plaintiff can prove a cause of action against the non-diverse defendant. The burden of establishing that joinder is fraudulent is on the party seeking removal to federal court, and the burden is a heavy one.

*Fabiano Shoe*, 41 F.Supp.2d at 71 (citations omitted).

I agree with both Judge Saris and Judge Harrington. In deciding the matters now before me, I will follow the well-reasoned opinions in *Mills* and *Fabiano Shoe*. I will also follow the opinion of the Court of Appeals for the Second Circuit in *Whitaker*.

### c. Common Defense Rule

#### i. Introduction

Plaintiffs in all three cases point out that the law of fraudulent joinder developed in the Fifth Circuit differs slightly from that

developed in *Mills, Fabiano Shoe,* and *Whitaker.* In particular, plaintiffs bring to my attention a rule recently adopted by a panel of the Fifth Circuit that no court in this circuit has yet considered. Specifically, that panel concluded that the United States Supreme Court, in *Chesapeake & Ohio Railway Co. v. Cockrell,* 232 U.S. 146, 34 S.Ct. 278, 58 L.Ed. 544 (1914), articulated the "common defense rule," which narrows the doctrine of fraudulent joinder. *See Smallwood v. Illinois Central Railroad Co.,* 342 F.3d 400 (5th Cir.) [hereinafter *Smallwood I*], *reh'g denied,* 352 F.3d 220 (5th Cir.) [hereinafter *Smallwood II*], *and reh'g en banc granted,* 355 F.3d 357 (5th Cir.2003) [hereinafter *Smallwood III*].

The *Kendall, Henderson,* and *Caston* plaintiffs contend that this "common defense rule" applies to the facts and circumstances of their respective case, and urge me also to adopt this "common defense rule."

As explained above, I have no obligation to follow Fifth Circuit precedent. But, I may not ignore applicable Supreme Court precedent. Accordingly, I turn now to *Cockrell* to determine, as a matter of first impression in this circuit, the contours and applicability of the so-called "common defense rule" of *Cockrell.*

### ii. *Cockrell*

In *Cockrell,* the Supreme Court reviewed a decision that denied the efforts by petitioner Chesapeake & Ohio Railway Company (C & O) to remove the original action to federal court. The original case, in state court, was brought by Cockrell against C & O and two employees of C & O (an engineer and a fireman). Complete diversity did not exist. C & O was a Virginia corporation. Plaintiff Cockrell and the two defendant employees were citizens of Kentucky. C & O nevertheless attempted to remove the case to federal court on the basis of diversity jurisdiction, alleging that the defendant employees had been fraudulently joined.

In support of its contention of fraudulent joinder, C & O asserted that plaintiff Cockrell's negligence charges against the non-diverse defendant employees "were each and all 'false and untrue' ... and that none of the charges of negligence [against the non-diverse defendants] could be sustained on the trial." *Cockrell,* 232 U.S. at 151, 34 S.Ct. 278. The Court rejected the argument of fraudulent joinder, explaining the following way:

> Putting out of view, as must be done, the epithets and mere legal conclusions in the petition for removal, [defendant C & O's petition] may have disclosed an absence of good faith on the part of the plaintiff in bringing the action at all, but it did not show a fraudulent joinder of the engineer and fireman. With the allegation that they were operating the train which did the injury standing unchallenged, the showing amounted to nothing more than a traverse of the charges of negligence .... As no negligent act or omission personal to the railway company was charged, and its liability, like that of the two employees, was, in effect, predicated upon the alleged negligence of the latter, *the showing manifestly went to the merits of the action as an entirety, and not to the joinder; that is to say, it indicated that the plaintiff's case was ill founded as to all the defendants.* Plainly, this was not such a showing as to engender or compel the conclusion that the two employees were wrongfully brought into a controversy which did not concern them. As they admittedly were in charge of the movement of the train, and their negligence was apparently the principal matter in dispute, *the plaintiff had the*

*same right, under the laws of Kentucky, to insist upon their presence as real defendants as upon that of the railway company.*

*Id.* at 153, 34 S.Ct. 278 (emphases added).

The Supreme Court, in the middle of the above passage, distinguishes between an allegation that non-diverse defendants are fraudulently joined and an allegation that no case exists against any of the defendants (non-diverse and diverse alike). The Court makes clear that an allegation that applies to all the defendants—that goes to "the merits of the action as an entirety"— is *not* about fraudulent joinder. Such an assertion, the Court indicates, does not show that the non-diverse defendants were "wrongfully brought into a controversy which did not concern them."

Stated differently, if an argument offered to prove fraudulent joinder of non-diverse defendants also shows that no case exists against the diverse defendants, it is not apparent why the non-diverse defendants should be set apart as "fraudulently joined." Such an argument is in fact no more than an assertion that no case can be made against *any* of the defendants (diverse and non-diverse alike). In those circumstances, as the Court states, "the plaintiff ha[s] the same right . . . to insist upon [the] presence [of the local defendants] as real defendants as upon that of the [diverse defendants]." *Id.*

■ Accordingly, I conclude that, under *Cockrell*, fraudulent joinder does not exist when an argument offered to prove the fraudulent joinder of non-diverse defendants simultaneously shows that no case exists against the diverse defendant or defendants. In those circumstances, no legitimate reason exists to label the non-diverse defendants as fraudulently joined. *Cockrell* clarifies and, in effect, narrows the doctrine of fraudulent joinder.

Defendant New England suggests an alternate interpretation of *Cockrell* (Def. New England's Supp. & Am. Opp., Docket No. 18 in Civil Action No. 03–11040, at 7– 8), but I am not persuaded. New England focuses on the following sentence from *Cockrell:*

With the allegation that they were operating the train which did the injury unchallenged, the showing amounted to nothing more than a traverse of the charges of negligence . . . .

*Cockrell,* 232 U.S. at 153, 34 S.Ct. 278. Based on this single sentence from *Cockrell,* New England concludes the following:

*Cockrell* simply reaffirmed the rule that a removing defendant, in the petition for removal, is required to present something beyond a mere denial of the complaint to allege fraudulent joinder.

(Def. New England's Supp. & Am. Opp., Docket No. 18 in Civil Action No. 03– 11040, at 8). I am not persuaded because New England's interpretation based on this single sentence fails to account for or explain the remainder of the Court's reasoning in *Cockrell.*

■ New England's resistance to my interpretation of *Cockrell* is understandable. My interpretation of *Cockrell,* in effect, keeps the doctrine of fraudulent joinder within narrow limits and thus reduces the ability of defendants to escape from state courts. It is important to remember, however, that the doctrine of fraudulent joinder is a judicially-created exception to the complete diversity rule. *See Triggs,* 154 F.3d at 1287 ("Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity."). It is both prudent and appropriate to keep the doctrine within narrow limits rather than to expand it. Expansion of diversity jurisdiction remains the prerogative of Congress.

### iii. *Cockrell* in Other Circuits

The law regarding *Cockrell* in the few other federal circuits that have considered the Supreme Court opinion is mostly consistent with the interpretation and conclusions I stated above.

As noted previously, a panel of the Fifth Circuit concluded in *Smallwood I* that *Cockrell* articulates a "common defense rule." The panel's explanation of *Cockrell* is similar in significant and relevant part to my interpretation of *Cockrell.* The Fifth Circuit opinion in *Smallwood II*, in which the panel from *Smallwood I* denied a panel rehearing, states the following:

> The Supreme Court [in *Cockrell*] thus made clear that the burden on the removing party is to prove that the joinder of the local parties was fraudulent; a showing that the plaintiff's case is barred as to all defendants is not sufficient. . . .
>
> The common defense rule [in *Cockrell*] reminds us that the proper focus of a fraudulent joinder claim is whether the joinder of the local parties was fraudulent, a simple concept that is too easily obscured. . . . [W]hen on a motion to remand a defendant's showing that there is no possibility of recovery against the local defendant equally discharges the non-resident defendant, there is no fraudulent joinder, only a lawsuit lacking in merit. In such cases, it makes little sense to single out the local defendants as "sham" defendants and call their joinder fraudulent. In such circumstances, the allegation of fraudulent joinder is more properly an attack on the plaintiff's case as such—an allegation that "the plaintiff's case [is] ill founded as to all the defendants." *Cockrell*, 232 U.S. at 153, 34 S.Ct. 278.

*Smallwood II*, 352 F.3d at 222–23.

The Fifth Circuit case law regarding *Cockrell* does present two issues, however.

The first is one of terminology. Unlike the Fifth Circuit, I do not apply the label "common defense rule." This difference in nomenclature is not so significant as to warrant extended explanation, but I do state the following brief reasons. First, the use of the label "common defense rule" implies that *Cockrell* articulated an exception or an addition to the doctrine of fraudulent joinder. In my view, *Cockrell* merely clarified the doctrine of fraudulent joinder. Second, the use of "common defense" can be ambiguous. The *Henderson* plaintiffs, for example, erroneously understand "common defense" to mean similar or identical defenses asserted separately by both the non-diverse and diverse defendants. The Fifth Circuit, however, manifested an intent for the phrase to mean a single defense that applies commonly. In my view, therefore, it is more appropriate to avoid entirely use of the phrase "common defense."

The second issue presented by the Fifth Circuit is that some confusion surrounds the Fifth Circuit case law on *Cockrell.*

A panel of the Fifth Circuit adopted the "common defense rule" in August 2003 in *Smallwood I.* Very soon after *Smallwood I*, a different panel of the Fifth Circuit decided *Ross v. Citifinancial, Inc.*, 344 F.3d 458 (5th Cir.2003). Like *Smallwood I*, *Ross* involved the removal of a case to federal court on the basis of fraudulent joinder. The panel in *Ross* concluded that the non-diverse defendants had been fraudulently joined and affirmed the district court's denial of remand.

*Ross* is the genesis of the confusion in the district courts of the Fifth Circuit regarding *Cockrell.* The problem began with the fact that many federal district judges in the Fifth Circuit concluded that, given the facts, the "common defense rule" could have been applied in *Ross. E.g., Mc-*

*Donald v. Union Nat'l Life Ins. Co.,* 307 F.Supp.2d 831, 835 (S.D.Miss.2004). As a consequence, some judges concluded that *Ross* limits or is inconsistent with *Smallwood I. See, e.g., id.* (This line of interpretation, which is not embraced by all federal district judges in the Fifth Circuit, *see Griffin v. Am. Gen. Fin. Inc.,* No. 1:03CV155, 2004 WL 716777 (N.D.Miss. Mar.17, 2004), notably began with Judge Barbour, the judge whom *Smallwood I* reversed. *See Brumfield v. Pioneer Credit Co.,* 291 F.Supp.2d 462, 466–67 (S.D.Miss.2003) (Barbour, J.).) The opinion in *Ross* does not, however, mention *Smallwood I, Cockrell,* or the "common defense rule." I will return to this fact shortly.

Days after *Ross,* yet another panel of the Fifth Circuit decided *Collins v. American Home Products Corp.,* 343 F.3d 765 (5th Cir.2003). The opinion in *Collins* cites with approval the "common defense" analysis presented in *Smallwood I.* The opinion does not mention *Ross* or conclude in any way that the principles from *Smallwood I* have been or should be limited.

After *Collins,* in December 2003, the panel from *Smallwood I* issued *Smallwood II,* denying a panel rehearing. The panel expanded its analysis of *Cockrell* and, significantly, "emphasize[d] ... that the common defense rule is not limited to cases that seek to avoid the well-pleaded complaint rule." *Smallwood II,* 352 F.3d at 224. This emphasis may have been a response to the contention that a limitation was being introduced.

The capstone on the muddle came later in December 2003 in *Smallwood III,* when the Fifth Circuit granted a rehearing *en banc* of *Smallwood I.* The oral argument for the rehearing occurred May 25, 2004.

The foregoing· events led one federal district judge in the Fifth Circuit—Judge Barbour, again—to throw up his hands:

> The conflict in the *Smallwood* and *Collins* cases on the one hand, and the *Ross* case on the other hand, has left the "common defense" issue in this case, as well as a myriad of other cases in which "common defenses" are alleged, in a state of total. confusion.

*McDonald,* 307 F.Supp.2d at 835.

The question that arises is whether this confusion undercuts my earlier conclusion that the Fifth Circuit's position regarding *Cockrell* is similar in significant and relevant part to my interpretation of *Cockrell.* I am not persuaded that it does. In my view, an examination of the opinions written by the *Court of Appeals* for the Fifth Circuit reveals that the "confusion" is only at the district level, not at the circuit level.

I do not agree with Judge Barbour and other district judges of the Fifth Circuit who assert that *Ross* limits or conflicts with *Smallwood I* or the "common defense rule" adopted therein. The *Ross* opinion *does not mention* either *Cockrell* or *Smallwood I.* It does not mention, much less explicitly refute, qualify, or limit, the "common defense rule."

> Judge Barbour suggested the following: Based on the omission of any analysis regarding the "common defense" theory by the *Ross* court, a reasonable inference can be drawn that the holding in *Smallwood* is limited to *federal defenses* that are common· to all defendants, and not to any other form of common defenses.

*E.g., McDonald,* 307 F.Supp.2d at 835 (Barbour, J.); *see also Brumfield,* 291 F.Supp.2d at 466–67 (Barbour, J.). I conclude, however, that it is more appropriate to infer from the omission of any analysis regarding the "common defense rule," *Cockrell,* or *Smallwood I* that the panel in *Ross* simply did not consider or was not presented with those issues. *Cf. Palma v.*

*Verex Assurance, Inc.,* 79 F.3d 1453, 1463 (5th Cir.1996) (citing *Matter of Texas Mortgage Servs. Corp.,* 761 F.2d 1068, 1073 (5th Cir.1985) (holding that issues not raised in the appellate brief need not be considered by the court of appeals)); *Ramos v. Roche Prods., Inc.,* 936 F.2d 43, 51 (1st Cir.1991) (same).

Judge Pepper of the Northern District of Mississippi has reached this exact inference. In a recent opinion, he reasoned:

> While [*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305 (5th Cir.2002), and *Green v. R.J. Reynolds Tobacco Co.,* 274 F.3d 263, 269 (5th Cir.2001),] do in fact address particular common defenses in considering whether there was fraudulent joinder, it does not appear from the context of the cases that any of the parties questioned the propriety of doing so .... Upon review, the Court finds that these cases do not directly address the broader question posed by *Smallwood* ..., e.g., whether such a common defense affords an appropriate foundation for removal jurisdiction predicated on fraudulent joinder.

*Griffin,* 2004 WL 716777, at *5. Judge Pepper then concluded that

> [t]he same is true of the decision in *Ross* .... Nowhere in the opinion is it evident that the parties litigated the common claims/defenses issue in the district court, or that the issue was one raised by the plaintiff in the appeal.

*Id.* at *5 n. 7; *see also Jenkins v. Union Nat'l Life Ins. Co.,* No. 4:03CV0034, 2004 WL 555250, at *3 (N.D.Miss. Mar.15, 2004) (Pepper, J.) (stating that the conflict between *Ross* and *Smallwood I* is only "apparent," by which the court "means to say that the two decisions do not *directly* conflict since neither addresses the other").

Accordingly, I infer that the absence from the *Ross* opinion of any analysis regarding *Smallwood I, Cockrell,* or the "common defense rule" simply means that the panel in *Ross* did not consider those matters. This inference leads to the conclusion that the opinion in *Ross* should not be understood either as conflicting with or in any way limiting the position taken in *Smallwood I* regarding *Cockrell.*

For these reasons, I am not persuaded that the "confusion" in the Fifth Circuit undercuts my earlier conclusion that the Fifth Circuit's position regarding *Cockrell* is similar in significant and relevant part to my interpretation of *Cockrell.* It is possible, of course, that the soon-to-be-issued *en banc* opinion regarding *Smallwood I* may alter the Fifth Circuit position on *Cockrell.* In my view, however, that result is unlikely and, in any event, only speculative.

In the Third Circuit, the case law regarding *Cockrell* also is similar in significant and relevant part to my interpretation of *Cockrell.* In *Boyer v. Snap–On Tools Corp.,* 913 F.2d 108 (3d Cir.1990), the Court of Appeals for the Third Circuit concluded the following:

> Informed by *Cockrell,* we hold that where there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses. Instead, that is a merits determination which must be made by the state court.

*Id.* at 113.

In another passage, the opinion in *Boyer* characterizes *Cockrell* as forbidding a "district court, in the guise of deciding whether the joinder was fraudulent, [from] stepp[ing] from the threshold jurisdictional issue into a decision on the merits." *Boyer,* 913 F.2d at 112. In my view, however,

this statement is unlikely to be adopted by the First Circuit. A decision about fraudulent joinder *is* a decision about merits; it is a decision about the merits of the case against the non-diverse defendants. The diverse defendant or defendants must show, after all, that no case can be made against the non-diverse defendants.

Perhaps this aspect of the *Boyer* opinion rested on an interpretation of the following sentence from *Cockrell:*

> As no negligent act or omission personal to the railway company was charged, and its liability, like that of the two employees, was, in effect, predicated upon the alleged negligence of the latter, *the showing manifestly went to the merits of the action as an entirety, and not to the joinder;* that is to say, it indicated that the plaintiff's case was ill founded as to all the defendants.

232 U.S. at 153, 34 S.Ct. 278 (emphasis added). The emphasized portion of the sentence could be read, at first blush, to distinguish between a "decision on the merits" and a "threshold jurisdictional issue." Such a reading, however, fails to take into account the phrase "as an entirety" or the Court's subsequent emphasis on "*all* the defendants." Thus, as explained earlier, the relevant distinction is between a claim that goes to all the defendants—to the merits of the action *as an entirety*— and a claim of fraudulent joinder.

I turn now to *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313 (9th Cir.1998), in which a panel of the Court of Appeals for the Ninth Circuit appears to reject the proposition that fraudulent joinder does not exist when an argument offered to prove the fraudulent joinder of non-diverse defendants simultaneously shows that no case exists against the diverse defendant or defendants. The *Ritchey* opinion, however, does not explore (much less reject) the possibility that the Supreme Court, in

*Cockrell,* adopted the proposition. I conclude, therefore, that I need not consider the opinion in *Ritchey* any further.

### iv. Summary of the Legal Standard for Fraudulent Joinder

■ In deciding the motions to remand filed by the *Kendall, Henderson,* and *Caston* plaintiffs, I will follow the well-reasoned opinions of Judges Saris and Harrington of this court in *Mills* and *Fabiano Shoe* respectively together with the opinion of the Court of Appeals for the Second Circuit in *Whitaker.* Under those opinions, a defendant who alleges fraudulent joinder of non-diverse defendants bears the burden of demonstrating, by clear and convincing evidence, either (1) that an outright fraud has been committed in the plaintiff's pleadings, or (2) that the pleadings show that no reasonable expectation exists of the plaintiff stating a cause of action in state court against the non-diverse defendants.

I will also follow the Supreme Court opinion in *Cockrell.* Under *Cockrell,* fraudulent joinder does not exist when an argument offered to prove the fraudulent joinder of non-diverse defendants simultaneously shows that no case can be made against the diverse defendant or defendants.

### 4. Disposition

Plaintiffs in all three cases have alleged numerous acts of tort by their respective non-diverse defendants.

Defendant New England does not allege that an outright fraud has been committed in the plaintiffs' pleadings in any of the three cases. Rather, New England asserts fraudulent joinder in all three cases under the second prong of the applicable test, contending that the *Kendall, Henderson,* and *Caston* plaintiffs have no

reasonable possibility of stating a cause of action in state court against their respective non-diverse defendants for the alleged torts.

New England attempts to do so in several ways. It contends in all three cases, for example, that plaintiffs do not satisfy necessary elements for certain alleged torts. It also asserts in all three cases that the respective statutes of limitation have run.

Some question exists as to whether statutes of limitation can be invoked in the fraudulent joinder context. *See In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liability Litig.,* MDL No. 1203, slip op. at 7 (E.D.Pa.2003) ("While our Court of Appeals has not spoken on whether a statute of limitations defense may be considered in support of a fraudulent joinder claim, we agree with two Courts of Appeals and my colleagues ... that have answered the question in the affirmative."); *see also Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313 (9th Cir.1998) (concluding that California statute of limitation defenses may be invoked in support of a fraudulent joinder claim). I am aware of no court in this circuit that has considered the question, but courts in other circuits have concluded that statutes of limitation may be considered in the fraudulent joinder context. *See, e.g., LeBlang Motors, Ltd. v. Subaru of America, Inc.,* 148 F.3d 680, 690–91 (7th Cir.1998).

But in light of *Cockrell,* I need not and do not reach this question in any of the three cases.

To prove fraudulent joinder of the non-diverse defendants, New England argues in all three cases that plaintiffs have no reasonable possibility of stating a cause of action against the non-diverse defendants for their alleged torts.

In *Caston,* however, such an argument simultaneously shows that no case can be made against the diverse defendant. Specifically, the claims in *Caston* against New England (the diverse defendant) are based in respondeat superior; New England's liability in *Caston* is predicated entirely upon the torts allegedly committed by the non-diverse *Caston* defendants. As a consequence, if no cause of action can be stated against the non-diverse defendants for their alleged torts, no case exists against New England. (For example, if a statute of limitation has run on a claim against a non-diverse defendant, it necessarily has run for New England.) Accordingly, the arguments offered by New England to prove fraudulent joinder simultaneously show that no case can be made against the diverse defendant.

■ It follows, under *Cockrell,* that the non-diverse defendants in *Caston* are not fraudulently joined. As a result, complete diversity does not exist in *Caston.* Because I ascertain no other basis for federal subject matter jurisdiction, remand is required under 28 U.S.C. § 1447. The Practice and Procedure Order below allows the *Caston* plaintiffs' motion to remand (Docket No. 35 in Civil Action No. 03–11547) and directs the Clerk to return *Caston* (No. 03–11547–REK) to the state court from which it was removed.

In *Kendall* and *Henderson, some* claims against New England are based in the doctrine of respondeat superior. Accordingly, the arguments offered by New England to prove fraudulent joinder concomitantly show in these cases that *some* claims against the diverse defendant must fail.

These circumstances are similar to, but not exactly the same as, the circumstances under which *Cockrell* precludes a finding of fraudulent joinder. The arguments offered to prove fraudulent joinder do not

show that *no case* can be made against the diverse defendant.

But, for the following reasons, I conclude that the difference is irrelevant. The Court in *Cockrell* concluded that fraudulent joinder does not exist when an argument offered to prove fraudulent joinder of non-diverse defendants simultaneously shows that no case can be made against the diverse defendants. The explanation for this conclusion was that such an argument "does not engender or compel the conclusion that the [non-diverse defendants] were wrongfully brought into a controversy which did not concern them." *Cockrell*, 232 U.S. at 153, 34 S.Ct. 278. Stated differently, if an argument offered to prove fraudulent joinder of non-diverse defendants also shows that no case exists against the diverse defendants, no legitimate reasons exist to set apart the non-diverse defendants as "fraudulently joined."

The concerns that underlie *Cockrell* also apply to arguments offered to prove fraudulent joinder that simultaneously show that *some claims* against the diverse defendant or defendants must fail. Such arguments do not engender or compel the conclusion that the non-diverse defendants were wrongfully brought into a controversy that did not concern them. They do not offer a legitimate reason to set apart the non-diverse defendants as "fraudulently joined."

Accordingly, I conclude that, in light of *Cockrell*, the non-diverse defendants in *Kendall* and *Henderson* are not fraudulently joined. This court thus does not have federal subject matter jurisdiction in these cases on the basis of diversity. Because I ascertain no other basis for federal subject matter jurisdiction, remand of *Kendall* and *Henderson* is required under 28 U.S.C. § 1447.

The Practice and Procedure Order below allows the *Kendall* plaintiffs' motion to remand (Docket No. 5 in Civil Action No. 03–11040) and the *Henderson* plaintiffs' motion to remand (Docket No. 4 in Civil Action No. 03–11041). Furthermore, it directs the Clerk to return *Kendall* (No. 03–11040–REK) and *Henderson* (No. 03–11041–REK) to the state courts from which they were removed.

### D. Remaining Motions

#### 1. *Kendall*

In light of the decision to remand *Kendall* (No. 03–11040–REK) to the state court from which it was removed, defendant Ratcliffe and McNamara's motion to dismiss is moot. Defendant Jordan's motion for summary judgment is similarly moot. The Practice and Procedure Order below accordingly denies as moot both defendant Ratcliffe and McNamara's motion to dismiss (Docket No. 12) and defendant Jordan's motion for summary judgment (Docket No. 17).

#### 2. *Henderson*

In light of the decision to remand *Henderson* (No. 03–11041–REK) to the state court from which it was removed, defendant DeLoach and Spring's motion to dismiss is moot. Defendant Jordan's motion for summary judgment is similarly moot. The Practice and Procedure Order below accordingly denies as moot both defendant DeLoach and Spring's motion to dismiss (Docket No. 12) and defendant Jordan's motion for summary judgment (Docket No. 16).

### IV. *Pike County National Bank* (Civil Action No. 03–11548–REK)

### A. Pending Matters

Pending for decision before this court are matters related to the following filings:

(1) Plaintiff's Motion To Remand (Docket No. 23, filed November 14, 2003), with Memorandum in Support of Motion To Remand (copy of the memorandum filed in S.D. Miss. (CA No. 3:03–51) before transfer to this court), and Letter from Grady Tollison Supplementing Plaintiff's Motion To Remand (Docket No. 28, filed January 6, 2004);

(2) New England's Opposition to Plaintiff's Motion To Remand (Docket No. 24, filed November 28, 2003), with New England's Memorandum of Authorities Supporting Opposition to Plaintiff's Motion To Remand (Docket No. 25, filed December 1, 2003);

(3) Defendant Hilliard's Opposition to Plaintiff's Motion To Remand (Docket No. 26, filed November 28, 2004);

(4) Plaintiff's Supplemental Motion To Remand and Motion for Expedited Hearing (Docket No. 29, filed May 10, 2004).

## B. Relevant Procedural Background

On July 20, 2000, plaintiff Pike County National Bank filed this civil action in the Circuit Court of Hinds County, Mississippi.

On September 7, 2000, defendant Metropolitan Life Insurance Company (successor in interest of New England Mutual Life Insurance Company, hereinafter referred to as "New England") removed the action to the United States District Court for the Southern District of Mississippi.

Plaintiff moved to remand the case to the Circuit Court of Hinds County. On September 19, 2001, U.S. District Judge Henry Wingate remanded the action to the state court.

On January 17, 2003, defendant New England removed the action a second time to the United States District Court for the Southern District of Mississippi. Plaintiff again moved to remand the case to state court.

On August 12, 2003, before plaintiff's motion to remand was decided, the Judicial Panel on Multidistrict Litigation transferred the action to this court.

On November 11, 2003, plaintiff filed in this court a motion to remand the action to the Circuit Court in Hinds County, Mississippi (Docket No. 23). Defendant New England and defendant Hilliard have both filed oppositions (Docket Nos. 25 and 26).

At a hearing on December 12, 2003, this court heard oral argument on all motions pending at the time.

On May 10, 2004, plaintiff filed in this court a supplemental motion to remand and motion for expedited hearing (Docket No. 29).

## C. Plaintiff's Motion To Remand

### 1. Introduction

It is my ordinary practice in these multidistrict litigation proceedings to have parties who are transferred to this court refile with the Clerk of this court any motions that were pending at the time of transfer. Accordingly, even though plaintiff forwarded to this court a copy of the motion to remand and accompanying memorandum that were pending in the United States District Court for the Southern District of Mississippi, I requested through my Deputy Clerk that the papers be refiled in this court.

Plaintiff re-filed with this court the motion to remand (Docket No. 23), but neglected to file a copy of the memorandum in support. Plaintiff's counsel refused, even after conversation with the Deputy Clerk, to file with this court a copy of the memorandum in support.

To avoid prejudicing plaintiff as a result of its counsel's inexplicable failure to com-

ply with the requests and procedures of this court, I take into consideration the forwarded copy of the memorandum in support that was filed in the Southern District of Mississippi. I have so noted in the list of pending matters.

### 2. Disposition

In the ordinary course, a case may be removed by defendants under 28 U.S.C. § 1441 from state court to federal court only at the outset of the civil action. Specifically, the statutory provision that governs removal procedure (28 U.S.C. § 1446) states the following:

> The notice of removal of a civil action or proceeding shall be filed *within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading* setting forth the claim for relief upon which such action or proceeding is based, *or within thirty days after the service of summons upon the defendant* if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b) (emphasis added). Following these requirements, defendant New England removed this case to federal district court in September 2000. The U.S. District Court remanded the case to state court.

Now, at a time well beyond the thirty-day limitation specified above, defendant New England has removed this case again. New England contends that this removal is permitted, directing this court to the second paragraph of 28 U.S.C. § 1446(b):

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be as-

certained that the case is one which is or has become removable . . . .

*Id.*

The above paragraph has been construed to allow defendants in a civil action to remove cases that, like the case at bar, have previously been removed and remanded. For example, an opinion by the First Circuit characterizes the paragraph "and the doctrine codified therein" as follows:

> [A] defendant who fails in an attempt to remove on the initial pleadings can file a removal petition when subsequent pleadings or events reveal a New and Different ground for removal.

*Fed. Deposit Ins. Corp. v. Santiago Plaza,* 598 F.2d 634, 636 (1st Cir.1979); *see also S.W.S. Erectors v. Infax, Inc.,* 72 F.3d 489, 492–94 (5th Cir.1996).

New England contends that it has moved appropriately for a second removal under this paragraph. It asserts that, in accordance with the paragraph, it filed a notice of removal within thirty days of receiving "an amended pleading, motion, order or other paper from which it [was] first . . . ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b).

Specifically, New England directs this court to two letters produced to it on December 20, 2002 by Gerald Taylor, plaintiff's accountant. New England filed a notice of removal within thirty days of receiving these letters, which it contends constitute "other paper."

According to New England, it "first ascertained" from these letters that "the case is one which is or has become removable." It contends that it ascertained that the claims in this case are completely preempted by federal law—the Employee Retirement Income Security Act ("ERISA"), in particular.

For the reasons below, however, I conclude that New England learned from these letters nothing new about the removability of this case.

Some background information is necessary. In its previous removal of this case, New England contended that the claims in this case are completely preempted by ERISA. Specifically, it asserted that this case involves a retirement plan under ERISA, and that plaintiff sought to recover benefits and clarify its rights under the plan. The United States Supreme Court has concluded that ERISA completely preempts state law claims that fall within the civil enforcement provision of ERISA, which includes the recovery of benefits and the clarification of rights under ERISA plans. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

According to New England, plaintiff responded by asserting that the retirement plan at issue is a "top hat" plan and, therefore, exempt from complete preemption by ERISA.

I turn now from background matters back to the case at bar. New England contends that, until it received the letters, it had no basis to challenge plaintiff's characterization of the retirement plan as a "top hat" plan. The letters allegedly present new facts that show the retirement plan is not a "top hat" plan, which, New England asserts, means that the plan is not exempt from complete preemption by ERISA. New England argues that it accordingly has ascertained from the letters that the case is one which is or has become removable.

If all of the foregoing were true statements of fact and accurate contentions of law, New England could argue convincingly that it has satisfied the conditions for a second removal under Section 1446(b). The problem, however, is that at least one contention of law is incorrect. Both defendant New England and plaintiff assert that a "top hat" plan is exempt from complete preemption by ERISA. This assertion is mistaken.

■ As both parties suggest in their briefs, a "top hat" plan is " 'unfunded' and 'maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees.' " *Cogan v. Phoenix Life Ins. Co.,* 310 F.3d 238, 242 (1st Cir.2002) (quoting 29 U.S.C. § 1101(a)(1)); *see also Garratt v. Knowles,* 245 F.3d 941, 946 n. 4 (7th Cir.2001); *Demery v. Extebank Deferred Compensation Plan (B),* 216 F.3d 283, 286–87 (2d Cir.2000). Such plans are exempt from ERISA's vesting, participation, funding, and fiduciary rules. *See Garratt,* 245 F.3d at 946 n. 4; *Demery,* 216 F.3d at 287; *Hampers v. W.R. Grace,* 202 F.3d 44, 46 n. 3 (1st Cir.2000).

"Top hat" plans *are not,* however, exempt from all of ERISA's provisions. They are subject, for example, to ERISA's criminal and civil enforcement provisions. *See Garratt,* 245 F.3d at 946 n. 4; *Demery,* 216 F.3d at 287; *Hampers,* 202 F.3d at 46 n. 3. As explained previously, ERISA completely preempts state law claims that fall within the civil enforcement provision of ERISA. *See Taylor,* 481 U.S. at 66, 107 S.Ct. 1542. Accordingly, "top hat" plans are not exempt from complete preemption by ERISA. *See Garratt,* 245 F.3d at 945–48 (concluding that ERISA completely preempted claims regarding a "top hat" plan). (In contrast, an "excess benefit" plan is entirely exempt from ERISA. *See Goldstein v. Johnson & Johnson,* 251 F.3d 433, 437 n. 2 (3d Cir.2001); *Garratt,* 245 F.3d at 946 n. 4.)

■ Because a "top hat" plan is *not* exempt from complete preemption by

ERISA, defendant New England could not ascertain from the letters anything at all about the removability of this case. Even assuming that the letters revealed a change in the "top hat" status of the plan at issue, as New England claims they do, this case is as removable now as it was before New England received the letters. The law is clear and unambiguous: contrary to the assertion of plaintiff and New England, a "top hat" plan is subject to complete preemption by ERISA to the same extent as a plan that is not a "top hat" plan.

As stated above, I conclude for the foregoing reasons that New England learned from the "Gerald Taylor" letters nothing new about the removability of this case.

New England therefore has not received "an amended pleading, motion, order or other paper from which it [was] first ... ascertained *that the case is one which is or has become removable.*" 28 U.S.C. § 1446(b) (emphasis added). Accordingly, New England is not permitted under the second paragraph of Section 1446(b) to bring this second removal. Remand is thus required. The Practice and Procedure Order below allows plaintiff's motion to remand (Docket No. 23), and directs the Clerk to return this civil action (No. 03–11548–REK) to the state court from which it was removed.

I note that plaintiff did not suggest the basis upon which I have remanded this case. It was, after all, plaintiff who first erroneously asserted that a "top hat" plan is exempt from complete preemption by ERISA. Plaintiff challenges the removal by New England on several other grounds. I need not and do not decide those questions.

The irony of this situation is not lost on this court. This case has resulted in a resolution favorable to plaintiff on the basis of a misstatement of law initially advanced by plaintiff. Defendant New England, however, either erred in its research or relied erroneously on plaintiff's mistaken assertion.

### D. Plaintiff's Supplemental Motion To Remand

Plaintiff has filed what it has entitled a "Supplemental Motion To Remand and Motion for Expedited Hearing." In reality, the motion neither provides substantive supplemental information regarding remand nor seeks an expedited hearing. Rather, plaintiff's motion appears simply to be a request for a ruling on its motion to remand. In light of the rulings and conclusions above, I conclude that plaintiff's motion is moot.

The Practice and Procedure Order below accordingly denies this motion (Docket No. 29) as moot.

### PRACTICE AND PROCEDURE ORDER NO. 19

For the foregoing reasons, it is ORDERED:

(1) No tag-along civil actions remain before this court in this MDL proceeding, MDL–1105 (REK).

(2) No Case Management Conference ("CMC") is scheduled for these MDL proceedings.

In *Kendall et al. v. Metropolitan Life Insurance Co. et al.*, Civil Action No. 03–11040–REK:

(1) Plaintiffs' Motion To Substitute the Affidavit of Allen K. Hess (Docket No. 24) is ALLOWED.

(2) Plaintiffs' Motion To Remand (Docket No. 5) is ALLOWED.

(3) The Clerk is directed to return this civil action (No. 03–11040–REK) to the state court from which it was removed.

(4) Defendants Ratcliffe and McNamara's Motion To Dismiss, or, in the Alternative, for Summary Judgment (Docket No. 12) is DENIED AS MOOT.

(5) Defendant Jordan's Motion for Summary Judgment (Docket No. 17) is DENIED AS MOOT.

In *Henderson et al. v. Metropolitan Life Insurance Co. et al.*, Civil Action No. 03–11041–REK:

(1) Plaintiffs' Motion To Substitute the Affidavit of Allen K. Hess (Docket No. 22) is ALLOWED.

(2) Plaintiffs' Motion To Remand (Docket No. 4) is ALLOWED.

(3) The Clerk is directed to return this civil action (No. 03–11041–REK) to the state court from which it was removed.

(4) Defendants Cooper DeLoach and Kyle Spring's Motion To Dismiss, or, in the Alternative, for Summary Judgment (Docket No. 12) is DENIED AS MOOT.

(5) Defendant Fulton A. Jordan's Motion for Summary Judgment (Docket No. 16) is DENIED AS MOOT.

In *Caston et al. v. Metropolitan Life Ins. Co. et al.*, Civil Action No. 03–11547–REK:

(1) Plaintiffs' Motion To Remand (Docket No. 35) is ALLOWED.

(2) The Clerk is directed to return this civil action (No. 03–11547–REK) to the state court from which it was removed.

In *Pike County National Bank v. Metropolitan Life Insurance Co. et al.*, Civil Action No. 03–11548–REK:

(1) Plaintiff Pike County National Bank's Motion To Remand (Docket No. 23) is ALLOWED.

(2) The Clerk is directed to return this civil action (No. 03–11548–REK) to the state court from which it was removed.

(3) Plaintiff Pike County National Bank's Supplemental Motion To Remand and Motion for Expedited Hearing (Docket No. 29) is DENIED AS MOOT.